BUTTERWORTH, Commissioner of Patents, *v.* UNITED STATES *ex rel.* HOE & Others.

IN ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued October 15, 16, 1884.—Decided November 3, 1884.

The Secretary of the Interior has no power by law to revise the action of the Commissioner of Patents in awarding to an applicant priority of invention, and adjudging him entitled to a patent. The legislation on this subject examined and reviewed.

The executive supervision and direction which the head of a department may exercise over his subordinates in matters administrative and executive do not extend to matters in which the subordinate is directed by statute to act judicially.

The action of the Commissioner of Patents in awarding or refusing a patent to an applicant, and in matters of that description, is quasi-judicial.

The Commissioner of Patents, after determining that a patent shall issue, acts ministerially in preparing the patent for the signature of the Secretary, and in countersigning it. And if he then refuses to perform those ministerial acts *mandamus* will be directed.

The remedy by bill in equity, under Rev. Stat. § 4915, applies only when the court decides to reject an application for a patent on the ground that the applicant is not, on the merits, entitled to it.

The case is stated in the opinion of the court.

*Mr. Solicitor General* as *Amicus Curiæ;* and for the Commissioner of Patents, plaintiff in error.

*Mr. A. C. Bradley* for Scott.

*Mr. A. J. Willard* for defendants in error.

Mr. Justice Matthews delivered the opinion of the court.

This is a writ of error prosecuted for the purpose of reviewing and reversing the judgment of the Supreme Court of the District of Columbia, awarding a peremptory mandamus commanding the plaintiff in error, the Commissioner of Patents, to receive the final fee of $20 tendered by the relators, and cause letters patent of the United States to R. Hoe & Co., as assignees of Gill, to be prepared and sealed, according to law, for a certain invention therein particularly described, and to be presented to the Secretary of the Interior for his signature.

The facts upon which the controversy arises are shown by the record to be as follows : On March 12th, 1881, Gill, one of the relators, made application in due form to the Commissioner of Patents for letters patent for certain new and useful improvements in printing machines, of which he claimed to be the original and first inventor. An interference was declared with an unexpired patent, No. 238,720, granted to Walter Scott, March 8th, 1881. A hearing was had before the examiner of interferences, who decided in favor of Scott, and, on appeal to the examiners-in-chief, that decision was affirmed. An appeal from that decision was taken by Gill to the Commissioner of Patents, who decided that Gill was the original and first in-

ventor of the improvements claimed, and was entitled to a patent therefor; and, on June 4th, 1883, adjudged that such patent should issue to the relators composing the partnership of R. Hoe & Co., as assignees of Gill, the inventor.

On June 14th, 1883, an appeal was taken by Scott from that decision of the Commissioner of Patents to the Secretary of the Interior, under rules prescribed by that officer, dated May 17th, 1883, who, on March 7th, 1884, reversed the decision of the Commissioner of Patents in favor of Gill, adjudged Scott to be the original and first inventor of the improvements claimed, and that Gill was not entitled to a patent therefor.

In his return to the alternative writ the Commissioner of Patents, admitting that he had refused, in compliance with the demand of the relators, to accept their tender of the final fee, and to prepare the patent for signature, and to take any further steps therein, declares: "That he so refused, not because he desired to make further inquiry, or to be further advised in that behalf, no motion or other proceeding for rehearing or review had been taken or was pending before him in that behalf, but that he based his refusal, and does so still, solely upon the ground that the honorable the Secretary of the Interior had entertained the appeal taken to him from said decision under the rules aforesaid, and had, in pursuance of said appeal, entered a decision reversing that of the Commissioner of Patents, and awarded priority of invention to Walter Scott."

The return proceeds as follows:

"Your respondent further says that for many years, and until 1881, it was held, in pursuance of decisions and opinions of the honorable Attorney-General made in that behalf, that the honorable Secretary of the Interior had, and therefore has, no legal authority to review on appeal a decision of the Commissioner of Patents, wherein the Commissioner has finally adjudged an applicant to be entitled to a patent as prayed for in his application; in other words, that the judgment of the Commissioner of Patents upon the right of an applicant to have and receive a patent is final and conclusive, subject only to review by the Supreme Court of the District of Columbia, and such other courts as have jurisdiction in that

behalf, and by the Commissioner; and the practice of the
Patent Office and the honorable the Secretary of the Interior
conformed thereto. This question, however, was again raised in
the cases of *Nicholson* v. *Edison*, and *Le Roy* v. *Hopkins*, and the
honorable the Attorney-General of the United States, to whom
the question was again referred, in an opinion signed on the
20th day of August, 1881, held that the honorable the Secre-
tary of the Interior had and could, on appeal to him, exercise
the jurisdiction to review the decision of the Commissioner of
Patents, and control his action in that behalf; and later on, to
wit, the 26th day of February, 1884, the honorable Secretary,
in an official letter (a copy of which is hereto attached, marked
E), advised your respondent that he, the honorable Secretary,
had, in pursuance of the opinion of the honorable Attorney-
General, exercised jurisdiction on appeal from the judicial
action of the Commissioner in determining questions devolved
upon him by the statute.

" In deference to that opinion and the action of the honor-
able the Secretary of the Interior in the case under considera-
tion, your respondent refused, and does refuse, to accede to the
demand of the relator. That, in view of the decisions and the
uniform practice of the Commissioners of Patents and the
heads of the Department of the Interior prior to 1881, doubt
and uncertainty have arisen touching the legal obligations de-
volving upon your respondent in the case under consideration,
and those of like character.

" Your respondent further says that if the judgment of the
Commissioner of Patents, which is, that the relator is entitled
to receive his patent as prayed for, is final, and if upon such
judgment it is the lawful duty of the respondent to accept said
final fee and take the necessary and proper steps to prepare
said patent for issue, as prayed, then your respondent has im-
properly refused, and does improperly refuse, to prepare said
patent for issue; but if his decision is subject to review and re-
versal on appeal to the honorable the Secretary of the Interior,
then such refusal on the part of your respondent to accept said
fee and prepare said patent for issue is right and proper."

The return of the Commissioner also sets out as exhibits the

decision of his predecessor in office awarding priority of invention to Gill and adjudging him to be entitled to a patent; the appeal of Scott to the Secretary of the Interior; the rules governing such appeals as adopted and promulgated by that officer; the decision on that appeal by the Secretary communicated by letter to the Commissioner, reversing the decision of the Commissioner and awarding priority of invention to Scott, and a subsequent letter of the Secretary to the Commissioner, dated February 26th, 1884, in which he states that at the request of his predecessor, Mr. Kirkwood, in connection with the cases of *Nicholson* v. *Edison* and *Leroy* v. *Hopkins,* the Attorney-General considered the question as to the extent of the supervisory authority of the Secretary over the acts of the Commissioner, and, in an opinion dated August 20th, 1881, reached the conclusion that the final discretion in all matters relating to the granting of patents is lodged in the Secretary of the Interior; that Secretary Kirkwood concurred in that opinion, and from that time to the present, appeals from the judicial action of the Commissioner of Patents have been considered by the Secretary of the Interior; that the attention of Congress was particularly directed to this new practice in the annual report of the Secretary of the Interior for 1881, and that there has not since been any legislative expression of dissent from the interpretation the existing law had received; and that he does not feel justified in discontinuing a practice which he finds thus established.

It is clear enough that if the action of the Commissioner of Patents, in the matter of controversy, is subject to the order of the Secretary of the Interior, the judgment of the Supreme Court of the District of Columbia must be reversed; for *mandamus* evidently will not lie to compel a public officer to do a particular thing which his superior in authority has lawfully ordered him not to do.

The direct and immediate question, therefore, for our determination, is, whether the Secretary of the Interior had power by law to revise and reverse the action of the Commissioner of Patents in awarding to Gill priority of invention, and adjudging him entitled to a patent.

The authority and power claimed for the Secretary of the Interior are asserted and maintained upon these general grounds : that he is the head of the department of which the Patent Office is a bureau; that the Secretary is charged by § 441 Rev. Stat., with the supervision of public business relating to patents for inventions, in the same terms and in the same sense as in the cases of the various other subjects which in that section are classed together, to wit, the census, the public lands, the Indians, pensions, and bounty lands, the custody and distribution of publications, etc.; that, by § 4883, it is required that all patents shall be signed by the Secretary, as the responsible representative of the government, in whose name the grant is made, and countersigned by the Commissioner of Patents, only to attest the act of his superior; that, by § 481, while the Commissioner is required to superintend or perform all duties respecting the granting and issuing of patents directed by law, it is thereby also provided that it must be under the direction of the Secretary of the Interior—a clause to be read, it is argued, as if it were expressly inserted as a qualification of every statutory duty imposed upon the Commissioner; that, by § 483, the regulations which, from time to time, the Commissioner may establish for the conduct of proceedings in the Patent Office, are subject to the approval of the Secretary; that, by § 487, the reasons for the refusal of the Commissioner to recognize any person as a patent agent, either generally or in any particular case, are subject to the approval of the Secretary; that this general relation of official subordination, with the accompanying powers of supervision and direction, extends to all the official acts of the Commissioner, without regard to any distinction between those which are merely ministerial and those which are judicial in their nature; and that such supervision and direction may be exerted at any stage of a proceeding, in the discretion of the Secretary, whether in advance, or during its progress, or after its termination, and embraces, therefore, the mode of appeal, though no appeal, in express terms, is actually given.

And it is claimed that this conclusion is strengthened by the

analogy of the other bureaus, forming parts of the various executive departments of the government, like that, for example, of the General Land Office, the Commissioner of which is, by law, subject to the supervision of the Secretary of the Interior, in respect to which it was decided, in *Magwire* v. *Tyler*, 1 Black, 195, approved and affirmed in *Snyder* v. *Sickles*, 98 U. S. 203, that the power of supervision and appeal vested in the Secretary extends to all matters relating to the General Land Office, and is co-extensive with the authority of the Commissioner to adjudge.

In reference to this argument from the analogy of the general relation of the heads of executive departments to their bureau officers, it may as well be observed, in this connection, that, although not without force, it will be very apt to mislead, unless particular regard is had to the nature of the duties entrusted to the several bureaus, and critical attention is given to the language of the statutes defining the jurisdiction of the chief and his subordinates, and the special relation of subordination between them respectively ; for it will be found, on a careful examination, too extensive and minute to be entered upon here, that the general relation between them, of superior and inferior, is varied by the most diverse provisions, so that in respect to some bureaus the connection with the department seems almost clerical, and one of mere obedience to direction, while in that of others the action of the officer, although a subordinate, is entirely independent, and, so far as executive control is concerned, conclusive and irreversible. And in respect to the particular illustration drawn from the relation of the General Land Office to the Department of the Interior, the language of the section of the Revised Statutes (§ 453) describes the duties of the Commissioner, to be performed under the direction of the Secretary, as executive duties, while those which relate to the decision of questions of private right under the pre-emption laws, being quasi-judicial, are made by § 2273 expressly subject to an appeal, first from the register and receiver to the Commissioner, and from him to the Secretary. *Lytle* v. *Arkansas*, 9 How. 314; *Barnard's Heirs* v. *Ashley's Heirs*, 18 How. 43. Each case must be governed by its own

text, upon a full view of all the statutory provisions intended to express the meaning of the legislature.

To determine that intention of the legislature, in reference to the principal question in the present case, it becomes important, in the first place, to obtain a clear idea of the nature and extent of the jurisdiction involved in the claim, that all the official acts of the Commissioner of Patents are subject to the direction and superintendence of the Secretary of the Interior.

If the Secretary is charged by law with the performance of such a duty, he is bound to fulfil it. It is imperative, not discretionary. He cannot discharge it, according to the intention of the statute, in a manner either arbitrary or perfunctory. While it may be admitted that, so far as the public alone have an interest in the proper performance by the Commissioner of his duties in the administration of his bureau, the Secretary might satisfy his duty of direction and superintendence by prescribing general rules of conducting the public business and securing, by general oversight, conformity to them ; yet, on the other hand, it must also be admitted, that whenever a private person acquires by law a personal interest in the performance by the Commissioner of any act, he thereby also acquires an individual interest in the direction and supervision of the Secretary, to correct any error, or supply any omission or defect in its performance, tending to his injury. It is a maxim of the law, admitting few if any exceptions, that every duty laid upon a public officer, for the benefit of a private person, is enforceable by judicial process. So that the Secretary would be bound, upon proper application, in every such instance, to inquire into, and if necessary redress, the alleged grievance. And hence the official duty of direction and supervision on the part of the Secretary implies a correlative right of appeal from the Commissioner, in every case of complaint, although no such appeal is expressly given. Such, indeed, is the practical construction put by the Secretary himself upon his own powers and duties ; for the rules governing appeals to the Secretary of the Interior in patent cases, made part of the return here, assume the equal right of all parties to the proceeding, whether *ex parte* or otherwise, to obtain his review of the action of the Commissioner,

not only in the final judgment, but upon all interlocutory questions material to the matter, to the decision of which exceptions have been duly taken during the progress of the inquiry.

It is further to be observed, in the same connection, that if the power and duty of the Secretary, in directing and superintending the performance by the Commissioner of his duties, and those of all other subordinates in the bureau, may be exercised in the form of appeal, it may also be exercised in any other mode, in the discretion of the Secretary, suitable to the end in view; for, if directing and superintending include review by appeal after a decision, they may as well embrace dictating, either in advance of action or from time to time, during its course and progress. So that it follows, in every case of an application for a patent, or for a reissue, or for an extension, or in cases of an interference, the Secretary may direct the matter to be heard before himself, and thereupon further direct what decision shall be rendered in each m 'ter by the Commissioner, so as to meet his approval. This right of interposition, at any stage of the proceeding, is explicitly maintained in the opinion of the Attorney-General of August 20th, 1881, which was made the basis for the reversal of the previous practice of the department in this particular, as will appear by the following extract:

"From the right and power of the Secretary to withhold his signature from the patent, unless he is satisfied of the claimant's title thereto, plainly follows an equal right to direct the Commissioner, while the proceedings are pending, to receive an amendment which will open up a line of evidence that may throw light on that title."

We are led, therefore, immediately to inquire whether such a construction of phrases, employed in establishing the organization of the Patent Office as a bureau in the Department of the Interior, is justified by a view of the whole legislation *in pari materia*, and consistent with the integrity of the system of the statutes in relation to letters patent for new and useful inventions.

The general object of that system is to execute the intention of that clause of the Constitution, Art. I., sec. VIII., which

confers upon Congress the power " to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." The legislation based on this provision regards the right of property in the inventor as the medium of the public advantage derived from his invention; so that in every grant of the limited monopoly two interests are involved, that of the public, who are the grantors, and that of the patentee. There are thus two parties to every application for a patent, and more, when, as in case of interfering claims or patents, other private interests compete for preference. The questions of fact arising in this field find their answers in every department of physical science, in every branch of mechanical art ; the questions of law, necessary to be applied in the settlement of this class of public and private rights, have founded a special branch of technical jurisprudence. The investigation of every claim presented involves the adjudication of disputed questions of fact, upon scientific or legal principles, and is, therefore, essentially judicial in its character, and requires the intelligent judgment of a trained body of skilled officials, expert in the various branches of science and art, learned in the history of invention, and proceeding by fixed rules to systematic conclusions.

Accordingly, it is provided in the statutes, Rev. Stat. § 4893, that on the filing of any application for a patent, the Commissioner shall cause an examination to be made of the alleged new invention or discovery, and if on examination it shall appear that the claimant is justly entitled to a patent under the law, and that the same is sufficiently useful and important, the Commissioner, not the Secretary, shall issue a patent therefor, although it must be signed by the Secretary. The claim is examined in the first instance by a primary examiner assigned to the class to which it belongs; if twice rejected by him, the applicant is entitled, Rev. Stat. § 4909, to appeal from his decision to that of the board of examiners-in-chief, constituted a tribunal for that purpose ; and from their decision, if adverse, he may appeal to the Commissioner in person. Rev. Stat. § 4910. If dissatisfied with his decision, the party, except

in cases of interference, in respect to which another provision is made, hereafter to be considered, may appeal to the Supreme Court of the District of Columbia. Rev. Stat. § 4911. To that appeal the Commissioner is a formal party, the court acting only on the evidence adduced before him, and confining its revision to the points set forth in the reasons of appeal. A certificate of its proceedings and decision is to be returned to the Commissioner and entered of record in the Patent Office, and shall govern—so the statute says—the further proceedings in the case, but without precluding, it continues, any person interested from the right to contest the validity of such patent in any court wherein the same may be called in question.

It is evident that the appeal thus given to the Supreme Court of the District of Columbia from the decision of the Commissioner, is not the exercise of ordinary jurisdiction at law or in equity on the part of that court, but is one step in the statutory proceeding under the patent laws whereby that tribunal is interposed in aid of the Patent Office, though not subject to it. Its adjudication, though not binding upon any who choose by litigation in courts of general jurisdiction to question the validity of any patent thus awarded, is, nevertheless, conclusive upon the Patent Office itself, for, as the statute declares, Rev. Stat. § 4914, it "shall govern the further proceedings in the case." The Commissioner cannot question it. He is bound to record and obey it. His failure or refusal to execute it by appropriate action would undoubtedly be corrected and supplied by suitable judicial process. The decree of the court is the final adjudication upon the question of right; everything after that dependent upon it is merely in execution of it; it is no longer matter of discretion, but has become imperative and enforceable. It binds the whole department, the Secretary as well as the Commissioner, for it has settled the question of title, so that a demand for the signatures necessary to authenticate the formal instrument and evidence of grant may be enforced. It binds the Secretary by acting directly upon the Commissioner, for it makes the action of the latter final by requiring it to conform to the decree.

Congress has thus provided four tribunals for hearing appli-

cations for patents, with three successive appeals, in which the Secretary of the Interior is not included, giving jurisdiction, in appeals from the Commissioner, to a judicial body, independent of the department, as though he were the highest authority on the subject within it. And to say that, under the name of direction and superintendence, the Secretary may annul the decision of the Supreme Court of the District, sitting on appeal from the Commissioner, by directing the latter to disregard it, is to construe a statute so as to make one part repeal another, when it is evident both were intended to co-exist without conflict.

The inference is that an appeal is allowed from the decision of the Commissioner refusing a patent, not for the purpose of withdrawing that decision from the review of the Secretary, under his power to direct and superintend, but because, without that appeal, it was intended that the decision of the Commissioner should stand as the final judgment of the Patent Office, and of the Executive Department, of which it is a part.

As already stated, the case of interferences is expressly excepted by § 4911 from the appeals allowed to the Supreme Court of the District. Further provision, covering such and also all other cases in which an application for a patent has been refused, either by the Commissioner of Patents or by the Supreme Court of the District, is found in Rev. Stat. § 4915. It is thereby provided that the applicant may have remedy by bill in equity. This means a proceeding in a court of the United States having original equity jurisdiction under the patent laws, according to the ordinary course of equity practice and procedure. It is not a technical appeal from the Patent Office, like that authorized in § 4911, confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced and upon the whole merits. Such has been the uniform and correct practice in the Circuit Courts. *Whipple* v. *Miner*, 15 Fed. Rep. 117; *Ex parte Squire*, 3 Ban. and A. 133; *Butler* v. *Shaw*, 21 Fed. Rep. 321. It is provided that the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that such applicant is entitled, according to law, to re-

ceive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the Commissioner to issue such patent on the applicant filing, in the Patent Office, a copy of such adjudication, and otherwise complying with the requirements of law. And in all cases where there is no opposing party, a copy of the bill shall be served on the Commissioner, and all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not.

It thus appears that, as, in cases of other applications for a patent refused by the Commissioner, the judgment, on a direct appeal, of the Supreme Court of the District is substituted for, and becomes the decision of, the Patent Office, so here, in cases of interference, where the Commissioner has rejected an application for a patent, the decree of the Circuit Court of the United States governs the action of the Commissioner, and requires him, in case the adjudication is in favor of the complainant, to issue the patent as decreed to him. It certainly cannot be successfully claimed that, to a writ of mandamus issued out of a court of competent jurisdiction, commanding the Commissioner of Patents to record and execute the judgment of the Supreme Court of the District, reversing on an appeal his decision refusing a patent in any case other than an interference, or the decree of a Circuit Court of the United States in any case under Rev. Stat. § 4915, requiring a patent to be issued to the claimant, it would be a sufficient answer that he had been directed by the Secretary of the Interior not to do so. If not, it must be, and is, because the decision of the Commissioner, as originally rendered, or that correction of .it required by the judicial proceedings specified in the two sections of the statutes referred to, is final and conclusive upon the Department.

This conclusion is strengthened by the provisions of Rev. Stat. § 4918. It is there enacted that, in case a patent is actually, though erroneously, issued, interfering with another, any person interested in any one of them, or in the working of the invention claimed under either of them, may have relief against the interfering patentee, and all parties interested under

him, by suit in equity against the owners of the interfering patent; and the court, on notice to adverse parties and other due proceedings had according to the course of equity, may adjudge and declare either of the patents void in whole or in part, or inoperative or invalid, in any particular part of the United States, according to the interest of the parties in the patent or the invention patented; of course, without prejudice to the rights of any person, except the parties to the suit, and those deriving title under them subsequent to the rendition of the judgment.

Thus every case is fully provided for, both when the Commissioner wrongfully refuses to issue a patent, and when, in cases of interference, he erroneously issues one; and that, by means of judicial proceedings, through tribunals distinct from and independent of the Patent Office, the integrity and force of whose judgments would be annulled if not regarded as conclusive upon the Commissioner, notwithstanding any power of direction and superintendence on the part of the Secretary, which is therefore necessarily excluded.

The law gives express appeals from the decision of the Commissioner, or, in cases where technical appeals are not given, other modes of review by judicial process. It gives no such appeal from him to the Secretary. If it exists, it is admitted it is only by an implication, which discovers an appeal in the power of direction and superintendence. That power does not necessarily, *ex vi termini*, include a technical appeal; and the principle applies that where a special proceeding is expressly ordained for a particular purpose it is presumably exclusive. It is clear that when the appeal is expressly authorized from the Commissioner to the court, either directly or by means of an original suit in equity, another appeal to the Secretary on the same matter is excluded; and no reason can be assigned for allowing an appeal from the Commissioner to the Secretary in cases in which he is by law required to exercise his judgment on disputed questions of law and fact, and in which no appeal is allowed to the courts, that would not equally extend it to those in which such appeals are provided, for all are equally embraced in the general authority of direction and superin-

tendence. That includes all or does not extend to any. The true conclusion, therefore, is, that in matters of this description, in which the action of the Commissioner is quasi-judicial, the fact that no appeal is expressly given to the Secretary is conclusive that none is to be implied.

The conclusion is confirmed by a review of the history of legislation on the point.

The first statute on the subject of patents, act of 1790, ch. 7, 1 Stat. 109, authorized their issue by the Secretary of State, the Secretary for the Department of War, and the Attorney-General, or any two of them, " if they shall deem the invention or discovery sufficiently useful and important."

The act of 1793, ch. 11, 1 Stat. 318, which next followed, authorized them to be issued by the Secretary of State, upon the certificate of the Attorney-General that they are conformable to the act. The 9th section of the statute provided for the case of interfering applications, which were to be submitted to the decision of arbitrators, chosen one by each of the parties and the third appointed by the Secretary of State, the decision or award of two of whom should be final as respects the granting of the patent.

This continued to be the law until the passage of the act of 1836, ch. 357, 5 Stat. 117, creating, in the Department of State, the Patent Office, " the chief officer of which shall be called," it says, " the Commissioner of Patents," and " whose duty it shall be, under the direction of the Secretary of State, to superintend, execute, and perform all such acts and things touching and respecting the granting and issuing of patents for new and useful discoveries, inventions, and improvements as are herein provided for or shall hereafter be by law directed to be done and performed," &c. By that act it was declared to be the duty of the Commissioner to issue a patent if he " shall deem it to be sufficiently useful and important," the very discretion previously vested in the three heads of Departments by the act of 1790 ; and, in case of his refusal, the applicant was ($ 7) secured an appeal from his decision to a board of examiners, to be composed of three disinterested persons, appointed for that purpose by the Secretary of State, one of whom, at least, to be

selected, if practicable and convenient, for his knowledge and skill in the particular art, manufacture, or branch of science to which the alleged invention appertained. The decision of this board being certified to the Commissioner, it was declared that "he shall be governed thereby in the further proceedings to be had on such application." A like proceeding, by way of appeal, was provided in cases of interferences. By § 16 of the act a remedy by bill in equity, as now given in §§ 4915, 4918 Rev. Stat., was given as between interfering patents or whenever an application shall have been refused on an adverse decision of a board of examiners. By § 11 of the act of 1839, ch. 88, 5 Stat. 354, as modified by the act of 1852, ch. 107, 10 Stat. 75, it was provided that in all cases where an appeal was thus allowed by law from the decision of the Commissioner of Patents to a board of examiners, the party, instead thereof, should have a right to appeal to the Chief Justice or to either of the assistant judges of the Circuit Court of the United States for the District of Columbia; and by § 10 the provisions of § 16 of the act of 1836 were extended to all cases where patents are refused for any reason whatever, either by the Commissioner or by the Chief Justice of the District of Columbia, upon appeals from the decision of the Commissioner, as well as where the same shall have been refused on account of or by reason of interference with a previously existing patent.

In this state of legislation, the Patent Office, by the act of 1849, ch. 108, 9 Stat. 395, was transferred to the Department of the Interior, the Secretary of which, it was enacted, "shall exercise and perform all the acts of supervision and appeal, in regard to the office of Commissioner of Patents, now exercised by the Secretary of State;" which language, so far at least as appeals, strictly so-called, are concerned, was without force, as no appeals had ever been given from any decision of the Commissioner to the Secretary of State, unless that can be called so, which, by § 7 of the act of 1836, 5 Stat. 120, was to be determined by a board of examiners, appointed, *pro re nata*, by the Secretary of State, and for which, as we have seen, an appeal to the Chief Justice of the Circuit Court of the District of Columbia had been substituted by the act of 1839, 5 Stat. 354.

The act of 1861, ch. 88, 12 Stat. 246, created the office of examiners-in-chief, "for the purpose of securing greater uniformity of action in the grant and refusal of letters patent," "to be composed of persons of competent legal knowledge and scientific ability, whose duty it shall be, on the written petition of the applicant for that purpose being filed, to revise and determine upon the validity of decisions made by examiners when adverse to the grant of letters patent; and also to revise and determine, in like manner, upon the validity of the decisions of examiners in interference cases, and, when required by the Commissioner, in applications for the extension of patents, and to perform such other duties as may be assigned to them by the Commissioner; that from their decisions appeals may be taken to the Commissioner of Patents in person, upon payment of the fee hereinafter prescribed; that the said examiners-in-chief shall be governed in their action by the rules to be prescribed by the Commissioner of Patents."

The act of July 8, 1870, 16 Stat. 198, revised, consolidated and amended the statutes then in force on the subject, and the substance of its provisions, material to the present inquiry, have been carried into the existing revision.

It will be observed that the judgment and discretion vested by the original patent law of 1790, in a majority of the three executive officers, the Secretary of State, the Secretary for the Department of War, and the Attorney-General, who were authorized to cause letters patent to issue, "if they shall deem the invention or discovery sufficiently useful and important," was transferred by the act of 1836, § 7, to the Commissioner of Patents, it being made his duty to issue a patent for the invention, "if he shall deem it sufficiently useful and important;" and is continued in him by Rev. Stat. § 4893, the language being, that he shall cause an examination to be made of the alleged new invention, "and if on such examination it shall appear that the claimant is justly entitled to a patent under the law, and that the same is sufficiently useful and important, the Commissioner shall issue a patent therefor."

It thus appears, not only that the discretion and judgment of the Commissioner, as the head of the Patent Office, is sub-

stituted for that of the head of the department, but also, that that discretion and judgment are not arbitrary, but are governed by fixed rules of right, according to which the title of the claimant appears from an investigation, for the conduct of which ample and elaborate provision is made; and that his discretion and judgment, exercised upon the material thus provided, are subject to a review by judicial tribunals whose jurisdiction is defined by the same statute. In no event could the direction of the Secretary of the Interior extend beyond the terms in which it is vested, that is, to the duties to be performed under the law by the Commissioner. The supervision of the Secretary cannot change those duties nor require them to be performed by another, nor does it authorize him to substitute his discretion and judgment for that of the Commissioner, when, by law, the Commissioner is required to exercise his own, and when that judgment, unless reversed, in the special mode pointed out, by judicial process, is by law the condition on which the right of the claimant is declared to depend. The conclusion cannot be resisted that, to whatever else supervision and direction on the part of the head of the department may extend, in respect to matters purely administrative and executive, they do not extend to a review of the action of the Commissioner of Patents in those cases in which, by law, he is appointed to exercise his discretion judicially. It is not consistent with the idea of judicial action that it should be subject to the direction of a superior, in the sense in which that authority is conferred upon the head of an executive department in reference to his subordinates. Such a subjection takes from it the quality of a judicial act. That it was intended that the Commissioner of Patents, in issuing or withholding patents, in reissues, interferences and extensions, should exercise quasi-judicial functions, is apparent from the nature of the examinations and decisions he is required to make, and the modes provided by law, according to which, exclusively, they may be reviewed.

Such has been the uniform construction placed by the department itself upon the laws defining the relation of its executive head to the Commissioner of Patents. No instance has

been cited in which the right of the Secretary to reverse such action of the Commissioner in granting or withholding a patent has been claimed or exercised prior to that based upon the opinion of the Attorney-General in 1881. The jurisdiction had been previously expressly disclaimed, in 1876, by Secretary Chandler, 9 Off. Gaz. 403, and by his immediate successor, Mr. Schurz, in 1877, 1878, and 1879, 12 Off. Gaz. 475; 13 Off. Gaz. 771; 16 Off. Gaz. 220.

Some question is made as to the remedy. We think, however, that *mandamus* will lie, and that it was properly directed to the Commissioner of Patents. He had fully exercised his judgment and discretion when he decided that the relators were entitled to a patent. The duty to prepare it, to lay it before the Secretary for his signature, and to countersign it, were all that remained, and they were all purely ministerial. These duties he had failed and refused to perform merely out of deference to the claim of the Secretary to reverse and set aside the decision on the merits in favor of the relators This we have held not to be a valid excuse. The case falls clearly within the principles acted upon in *Commissioner of Patents* v. *Whiteley*, 4 Wall. 522.

The remedy by bill in equity under § 4915 is not appropriate, because it applies only when the Commissioner decides to reject an application for a patent, on the ground that the applicant is not, on the merits, entitled to it. So that, if, in such a case, a decree for a patent could be considered, *ex proprio vigore*, as equivalent to a patent, or could be enforced by direct process in execution of it, nevertheless, the present is not a case where such a bill would lie.

It is suggested that the writ was erroneously awarded by the court below, on the ground that the decision of the Commissioner of Patents, in favor of issuing the patent to the relators, was erroneous in law upon its face. But that question does not arise upon this record. We have adjudged that it belongs exclusively to the Commissioner to decide the question for himself, whether a patent ought to issue. The statute points out the remedy for a party aggrieved by his error, if he has decided erroneously. It is not by an appeal to the Secretary; nor

can the question be presented in such a proceeding as the present.

The judgment of the Supreme Court of the District of Columbia is consequently

*Affirmed.*