## BRUEGGER et al. v. MARZALL.

Civ. A. No. 2444.

United States District Court
District of Columbia.

Feb. 4, 1953.

Clarence M. Fisher, Washington, D. C., W. Brown Morton (of Pennie, Edmonds, Morton, Barrows & Taylor), New York City, for plaintiffs.

E. L. Reynolds, Solicitor, U. S. Patent Office, and S. Wm. Cochran, Attorney U. S. Patent Office, Washington, D. C., for United States.

McLAUGHLIN, District Judge.

This action was instituted pursuant to the provisions of R.S. 4915, 35 U.S.Code, § 63, seeking the issuance by the Commissioner of Patents of a patent to the plaintiff Criscom-Russell Company on a new method of making finned heat exchanger tubes. Plaintiffs claim No. 25 regarded by the patent office as illustrative of the rejected claims consisted of the following:

"25. The method of making fin tubing which comprises furrowing the surface of the tube by a plowing action turning up material from below the surface and leaving it attached to the tube along the edges of the furrow, applying a fin strip to the tube with one edge thereof inserted within said furrow, and swaging said turned up material along the edges of the furrow against the opposite side of said strip."

The following questions are presented:

First: Does the word "plowing" or the term "plowing action" constitute an insufficient or inappropriate description of the operation described in Claim No. 25 of plaintiffs' application, and is said word or term so broad as to define nothing inventive over the reference?

Second: Do the disclosures in the Chamberlain, Gilmore, and Jennings patents, Numbers 647,249; 2,268,983 and 2,285,583 respectively, having to do with the machines whose operations result in the formation of grooves in flat metal surfaces, namely, respectively, in a lead plate by a series of rotary spinning knives which are moved relative to the work (647,249) and in a metal disk by moving the disks relative to a stationary tool which plows up metal from below the surface and lifts it into ridges beside the groove (2,268,983) cause Claim No. 25 in plaintiffs' application to be unpatentable?

Third: Does the disclosure in the British patent—(Renard No. 403,734)—cited by defendant cause Claim No. 25 in plaintiffs' application to lack invention and thus to be unpatentable?

As to the first question the Court is not persuaded in the circumstances that the word "plowing" or the term "plowing ac-

tion" conveys an inadequate or inappropriate impression or constitutes an inadequate or inappropriate description of the operation described in Claim No. 25 of plaintiffs' application. Nor, in the Court's opinion, does the reference in the testimony of plaintiffs' witness in the trial in this court to a relative rotation between the grooving roller and the tube, serve to alter the fact that the process described in Claim No. 25 of "furrowing the surface of the tube by a plowing action" results in turning up material from below the surface and leaving it attached to the tube along the edges of the furrow. The record justifies the finding that this result is accomplished through the method described in Claim No. 25. The word "plowing" has a definitely understood connotation which includes the laying up along side the groove created by the plowing operation the material removed from the groove. This elevation of metal alongside the groove is an essential part of Claim No. 25. The Court finds no lack of novelty in the plowing method above referred to as applied to the manufacture of finned tubing and outlined in Claim No. 25.

As to the second question the Government contends that the references demonstrate the existence in prior art of machines which operate to produce grooves in metal which grooves are similar in character to those produced by the operation of the patent in question. In the Court's opinion the operations under the claims in those patents which will result in grooving the metals involved in the respective claims are unlike in method and in character of result produced as compared with the method and result produced from the operation of Claim No. 25 in plaintiffs' application. The Court is not in agreement with the Government's contention that the mere fact that the references have to do with a manner of forming grooves in metal is determinative of the question of inventiveness in the plaintiffs' Claim No. 25. In the Court's opinion the factual differences between the situations present in the references and the plaintiffs' claim give validity to plaintiffs' contention that teaching in the references involve an art which is unrelated to the product in

connection with the manufacture of which the patent in question is to operate, namely, finned heat exchanger tubes.

Government relies on the holding in the case of In re Raleigh, 62 F.2d 200, 20 C.C.P.A.Patents, 751, to the effect that a patent directed to the making of fluid tight seams in the fabrication of metal radiators was a proper reference against a later application for the same method of making fluid tight seams in the fabrication of metal thermostat cells. The Court is not persuaded that the rule in the Raleigh case is applicable here. In that case there existed a close similarity between fluid tight seams in the two products involved. In the instant case there existed a fundamental difference between the character of the metal grooves in the references and those in the finned tubing to which the instant patent applies. The difference included the grooves themselves, the types of metals involved and the purposes which the grooves are designed to serve.

In the circumstances the method of forming grooves in metal included in the teachings in the Chamberlain, Gilmore, and Jennings patents do not, in the Court's opinion, constitute anticipation which would render the method of making fin tubing set forth in plaintiffs' Claim No. 25 unpatentable.

■ The instant claim—No. 25 in plaintiffs' (the Bruegger) application—is a claim for a method of manufacturing fin tubing and not for the apparatus used in the manufacture. Thus failure to include in the claim a showing of the positively driven roller through the use of which the metal is plowed up from the groove and laid in ridges alongside of the groove does not, in the Court's opinion, constitute a defect in the claim. Plaintiffs have adopted plowing or grooving which results in throwing up ridges alongside the grooves as a method in the making of finned tubing. The fact, in itself, that plowing or grooving has been used under other conditions and under different circumstances and for dissimilar purposes in other patents does not cause such patents to constitute anticipations.

■ The test as to what causes a prior publication to constitute an anticipation of a later patent is stated in the opinion in the case of Skelly Oil Co. v. Universal Oil Products Co., 3 Cir., 31 F.2d 427, at page 431, as follows:

"A patent relied upon as an anticipation must itself speak. Its specification must give in substance the same knowledge and the same directions as the specification of the patent in suit. Otto v. Linford, 46 L.T. (N.S.) 35, 44. It is not enough to prove that a method or apparatus described in an earlier specification can be made to produce this or that result. Flour Oxidizing Co. v. Carr & Co., 35 R.P.C. 457. A singularly sensible test of the rule of anticipation is given in British Thomson-Houston Co. v. Metropolitan Vickers Electrical Co., 45 R.P.C. 22, by asking the question—'Would a man who was grappling with the problem solved by the patent attacked, and having no knowledge of that patent, if he had had the alleged anticipation in his hand, have said: "That gives me what I wish?"' The Pope Alliance Corporation v. The Spanish River Pulp & Paper Mills, Ltd. (Privy Council Appeals No. 33 of 1928)."

■ In General Electric Co. v. Hartman, 1 Cir., 187 F. 131, 133, the Court stated:

"After a thing of this kind is accomplished, the point of view makes it seem a simple contrivance, but, in dealing with the question of invention, the essential view is from the state of the art existing at the time the necessary problem was sought to be solved."

The foregoing pronouncements appear to be peculiarly applicable to the problem with which plaintiffs were confronted in the solution of which they adopted the plowing method of grooving to the making of finned heat exchanger tubing.

Concerning the third question, the British patent relied on by the patent office as a reference is a patent of the machine for making tubing. It describes the standard machine for making finned tubing by means

of pressing in the grooves. The figures in the drawings show raised edges alongside the grooves. Plaintiffs, at the trial, produced testimony by the Vice President and General Manager in charge of plaintiffs' company that for 25 years he had used machines employing the design of the British patent and that such machines did not and could not produce grooves such as are delineated in the drawings on said patent. Defendant offered no contradictory evidence at the trial but relied on the contention that the patent was entitled to the presumption that it could produce the article disclosed, and took the position that the decisions of both the examiner and the Board of Appeals, holding British device to be operative, are in evidence, and that these decisions not only have the effect of evidence to be overcome by plaintiffs, but also constitute judicial findings on a question of technical fact which cannot be disturbed in the absence of clear error. Defendant cites Bullard Co. v. Coe, 79 U.S. App.D.C. 369, 147 F.2d 568, in support of its position. The situation here is not one, as in that case, in which the plaintiffs claim the reference—in this instance the British Patent—is inoperable. Plaintiffs concede the operability of the patent based on long usage of machines constructed in accordance with it. Plaintiffs here make the claim and introduce proof in support thereof, that while the British patent is operable it makes no claim by specification that it involves any means of producing grooves other than by the old method of pressing in on the tube and involves no claim in the specifications of grooving by the plowing method which produces ridges of metal along the edges of the groove. The drawing on the patent showing such metal ridges along the edges of the groove appears to be an endeavor to present a graphic representation of a specification. However, the specification itself does not appear to justify the result claimed in the drawing, as to metal ridges along the edges of the groove.

An examination of the examiner's statement—("Examiner's Reply to Brief", Defendant's Exhibit No. 1 G, page 3)—discloses that the examiner's conclusion that the roller shown on the drawing will displace ridges, as disclosed in the drawing, is reached from a construction of the words in the Renard specifications (Defendant's Exhibit 1 D, page 2, lines 35–48) "the grooved wheel the periphery of which presses down the material on each side of the groove" and the examiner's experience in the forging art and in observing forging and rolling processes in actual operation.

In discharging its duty the Court is required to make a finding of fact on the basic and essential question as to whether the British patent teaches a plowing method which produces ridges of metal along the edges of the grooves. The Court finds that the plaintiffs' evidence above outlined that machines constructed according to the British patent did not and could not, in 25 years operation, produce such ridges of metal, outweighs the conclusion of the examiner based on either his construction and interpretation of the words of the specifications, or upon his conclusions resulting from his experience generally in the forging art or from his observations of forging and rolling processes in actual operation.

While recognizing the rule announced in Smith v. Kingsland, 85 U.S. App.D.C. 284, 178 F.2d 26, that conclusions as to patentability involve technical conclusions which should not be disturbed if there is any rational basis for the decision, the Court is of the opinion in this case that under the rule laid down in Butterworth v. United States, 112 U.S. 50, 5 S.Ct. 25, 28 L.Ed. 656, it has the duty of trying the facts in the suit de novo as provided in R.S. 4915. Gilbert v. Marzall, 87 U.S.App. D.C. 1, 182 F.2d 389; Berry v. Robertson, D.C., 40 F.2d 915; Cooper v. Robertson, D.C., 38 F.2d 852. In comparing and weighing defendant's conclusions as above set out, and plaintiffs' testimony as to the actual results of the operation of the British patent, the conclusion is justified that the actual operation of the British patent will not produce the result shown in the drawings in said patent.

In the circumstances the Court concludes and holds that the disclosure in the British patent (Renard No. 403,734) cited

by the defendant does not cause Claim No. 25 in plaintiffs' application to lack invention.

Counsel will prepare tentative findings of fact and submit proper order.