George A. Schmidt, Harold W. Milton, Jr., Birmingham, Mich., Donald P. Selvecki, Detroit, Mich., Barnard, McGlynn & Reising, Birmingham, Mich., attorneys of record, for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents; Lutrelle F. Parker, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, DURFEE and NEESE, Judges, sitting by designation, ALMOND and BALDWIN, Judges.

56 CCPA

**Application of Hyland C. FLINT.**

**Patent Appeal No. 8159.**

United States Court of Customs and Patent Appeals.

July 3, 1969.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the final rejection of claims 1 to 6 and 9 to 44, all the claims remaining in appellant's application entitled "Spring Seat." [1]

The invention relates to an improvement in a spring seat and particularly to a unison action seat of the type which may be used in a vehicle or as a piece of furniture. As seen in Fig. 1, re-

1. Serial No. 391,518 filed August 24, 1964.

Fig. 1

produced here, appellant's seat comprises a base 10, a pair of L-shaped supporting brackets 16 mounted on base 10, and three generally U-shaped members 44, 54 and 68. Member 44 has leg portions 46 secured to base 10 by means of clips 24 pivotally mounted on brackets 16 and constitutes a seat-supporting wire. Member 54, also connected to base 10, serves as a resilient suspension spring. Member 68, extending upwardly from connecting member 74, is a back-supporting wire. Suitable cushion support means, such as flexible sheet material or sinuous spring wire strips, may be mounted upon the seat support wire 44 and the back support wire 68.

The sole issue presented is whether the board erred in affirming the rejection of all 42 claims on the ground that they are unduly multiplied within the purview of 35 U.S.C. § 112.[2]

Claims 1 to 6 and 9 to 44 are all drawn to the disclosed seat. Claims 1, 12, 23 and 34 are independent claims which dif-

2. The second paragraph of 35 U.S.C. § 112 requires the specification to conclude with:
 " * * * one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

Rule 75(b) of the Patent Office Rules of Practice amplifies the statute and states:
 "More than one claim may be presented provided, they differ substantially from each other and are not unduly multiplied."

fer only in scope. Claims 2 to 6, 9, 10 and 11, 13 to 22, 24 to 33, and 35 to 44 are like sets of dependent claims depending, respectively, upon independent claims 1, 12, 23 and 24. Corresponding ones of the claims in those sets add the same limitations to the claim on which they depend and thus differ from each other only in the manner in which the independent claims differ from each other. For example, claims 2, 13, 24 and 25 contain exactly the same words except for the number of the claim on which each depends. We reproduce base claims 12 and 34, along with several of their respective dependent claims, as illustrative since they were treated as exemplary by the board:

12. A seat comprising:

a base;

a U-shaped resilient seat support wire;

means pivotally securing the ends of the legs of said seat support wire to said base and spaced therefrom;

a U-shaped resilient suspension spring having the ends of the legs thereof secured to said base, the cross member of said suspension wire being disposed in parallel spaced relation to the cross member of said seat support wire;

a U-shaped resilient back support wire;

means pivotally securing the legs of said back support wire to the cross members of said seat support wire and said suspension spring to permit movement of said back support wire with said seat support wire without substantial change in the angularity between said back support wire and said base.

13. The seat set forth in claim 12 and further including cushion support means secured to said seat support wire and to said back support wire.

14. The seat set forth in claim 13 wherein said cushion support means include a flexible sheet secured to the legs of said seat support wire and to the cross member of said suspension spring, and a flexible sheet secured to the legs of said back support wire and to the cross member of said seat support wire.

17. The seat set forth in claim 13 wherein said cushion support means include a plurality of spring strips having oppositely disposed loops connected by straight portions, said spring strips extending laterally of said seat and being secured at the ends thereof to the legs of said seat support wire, and a plurality of spring strips having oppositely disposed loops connected by straight portions extending between and secured to the cross member of said back support wire and the cross member of said seat support wire.

34. A seat comprising:

a base;

a U-shaped resilient seat support wire pivotally supported in spaced relation on said base and extending rearwardly thereof, the cross member portion of said seat support wire being disposed rearwardly of said seat and in a plane spaced above the plane of pivotal support;

a U-shaped resilient suspension spring secured to said base and having the cross member portion thereof in parallel spaced relation and below said cross member of said seat support wire;

and a U-shaped resilient back support wire having the legs thereof pivotally secured to said cross members of said seat support wire and said suspension spring; said back support being movable with said seat support wire and with said suspension spring and pivoting about said pivot connection between said seat support wire and said base and pivoting about the flexure point of said suspension spring when said seat is loaded to maintain the angular relationship between said back support wire and said base.

35. The seat set forth in claim 34 and further including cushion support means secured to said seat sup-

port wire and to said back support wire.

36. The seat set forth in claim 35 wherein said cushion support means include a flexible sheet secured to the legs of said seat support wire and to the cross member of said suspension spring, and a flexible sheet secured to the legs of said back support wire and to the cross member of said seat support wire.

39. The seat set forth in claim 35 wherein said cushion support means include a plurality of spring strips having oppositely disposed loops connected by straight portions, said spring strips extending laterally of said seat and being secured at the ends thereof to the legs of said seat support wire, and a plurality of spring strips having oppositely disposed loops connected by straight portions extending between and secured to the cross member of said back support wire and the cross member of said seat support wire.

Claims 1, 9 to 11, 23 to 25, 28, 31 to 34 and 42 to 44, provisionally selected by appellant for prosecution in response to the examiner's requirement that no more than fifteen claims be selected for examination on the merits,[3] were indicated, by the examiner, as "avoid[ing] the prior art and be[ing] in allowable form," save for their inclusion in the undue multiplicity rejection.

In his Answer, the examiner defended his action in finally rejecting the claims as unduly multiplied by stating that "[i]n his opinion, the case is a relatively simple one * * * and that [42] claims * * * is an unreasonable number * * * and obscure[s] the

invention." The examiner also stated that the average number of claims in each of six reference patents, sighted during the prosecution disclosing inventions of comparable complexity, was 7.5 claims.

In affirming, the board stated:

Turning to base claims 12 and 34, for example, they recite the same three U-shaped elements, differing only in verbiage as to their disposition and intended operation. It is, in our opinion manifest that no different cooperation exists between base claim 12 and its dependent claims 13–22 from that between base claim 34 and its corresponding dependent claims. Without even going into the other two columns of claims, we are convinced from the second and the fourth columns, i. e. headed by base claims 12 and [34], that the claims presented are unduly and needlessly multiplied with the result of beclounding the invention and not satisfying the Statute, 35 USC 112.

Appellant contends that the examiner's reasons for the rejection "were always based on his *feeling* or *opinion* that the claims were unduly multiplied." It is urged that something more than "mere opinion" is required to justify a rejection on the ground of undue multiplicity.

While agreeing that "mere opinion" is insufficient, a review of the record discloses, we feel, that the examiner was not relying upon an opinion based upon a sixth sense as the basis for the rejection but rather upon a conclusion drawn from the facts and legal principles applicable thereto as seen by him. In various office actions he set forth "typical examples of substantial duplication or lack of material differentiation," discussed the rela-

---

3. The examiner followed the procedure set forth in section 706.03(1) of the Manual of Patent Examining Procedure, which provides in pertinent part:

To avoid the possibility that an application which has been rejected on the ground of undue multiplicity of claims may be appealed to the Board of Appeals prior to an examination on the merits of at least some of the claims presented, the Examiner should, at the time of making the rejection on the ground of multiplicity of claims, specify the number of claims which in his judgment is sufficient to properly define Applicant's invention and require the Applicant to select certain claims, not to exceed the number specified, for examination on the merits. The Examiner should be reasonable in setting the number to afford the Applicant some latitude in claiming his invention.

tive complexity of the invention, alleged a lack of difference in scope of the claims, and referred to representative prior art.

The principles applicable to the present situation are well established and were stated by this court in In re Chandler, 319 F.2d 211, 50 CCPA 1422:

> * * * applicants should be allowed reasonable latitude in stating their claims in regard to number and phraseology employed. The right of applicants to freedom of choice in selecting phraseology which truly points out and defines their inventions should not be abridged. Such latitude, however, should not be extended to sanction that degree of repetition and multiplicity which beclouds definition in a maze of confusion. The rule of reason should be practiced and applied on the basis of the relevant facts and circumstances in each individual case.

In the instant case it was the board's view that:

> While a reasonable number of claims adding to the basic claimed structure conventional elements, for rounding out the practical aspect of the invention is permissible, where, as here, the same is repeated with other base claims which differ from each other in scope and do not provide different combinational relationships with the structure of the base claims, the claims are unduly multiplied and tend to becloud the real invention in the case, thus not complying with 35 USC 112. Even if the features added by the dependent claims were to be found novel over the prior art, their repetition with more than one base claim differing only in scope is not justifiable for the same reasons.

We do not agree. We are not prepared to judicially notice, as did the board, that the dependent claims add only conventional elements commonly known. Moreover, the board's statement acknowledges a difference in scope between the base claims, thus rendering persuasive appellant's argument pointing out that only four independent claims are present, three of which have been held allowable over the art, and that logically the sets of dependent claims differentiate themselves from each other by the differences in scope of the independent claims. Any fifteen claims could have been selected for prosecution and found allowable, it is urged, indicating that the examiner was not confused by the fact that 42 claims were involved.

We fail to see the fourfold repetition of the same substance referred to by the board and solicitor. The claims differ from one another and we have had no difficulty in understanding the scope of protection. Nor is it clear, on this record, that the examiner or board was confused by the presentation of the claims in the case or that the public will be.

The decision is accordingly reversed.

Reversed.

NEESE, Judge (concurring).

I concur with the result separately for the sole purpose of respectfully disassociating my views from those of the majority to the extent that there is reliance on In re Chandler, 319 F.2d 211, 225, 50 CCPA 1422 [3] (1963). That decision, giving sanction *sub silento* to a patent examining procedure, Manual of Patent Examining Procedure, § 706.03(1), which is inharmonious with 35 U.S.C.A. § 112, ought not to be followed, but reversed.

So important is the benefit of the genius, meditation and skill of creators and innovators to our national sovereign and its people, Kendall v. Winsor, 21 U.S. (How.) 322, 16 L.Ed. 165, 167–168 (1859), that our Constitution grants to the Congress the power " * * * to promote the Progress of Science and useful Arts, by securing for limited Times, to Authors and Inventors, the exclusive Right to their respective Writings and Discoveries." Constitution, Art. I, § 8, cl. 8. In implementation of such power, the Congress has enacted statutory provisions prescribing the extent and limitations upon the right of the individual

inventor to exclude others from the use of his invention. The inventor has no means of acquiring this right, except as permitted by these statutes. Gayler et al. v. Wilder, 10 U.S. (How.) 477, 494, 13 L.Ed. 504, 511 (1850).

35 U.S.C. § 112 requires that the specification for an invention conclude with " * * * one or more claims, particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." The Commissioner of Patents is authorized to promulgate regulations for the governance of proceedings in his office. 35 U.S.C. § 6, United States ex rel. Steinmetz v. Allen, 192 U.S. 543, 24 S.Ct. 416, 48 L.Ed. 555 (1904). In the exercise of this authority, such Commissioner promulgated a rule allowing an inventor to present multiple claims, as contemplated by the aforementioned statute, but added the provisos that such claims must " * * * differ substantially from each other and are not unduly multiplied." Rule 75(b), Patent Office Rules of Practice. This regulation served to erode administratively the statutory method of an inventor's acquiring a limited right of monopoly on his discovery in the public interest. No longer could he apply to acquire that right in the manner permitted by the Congress; thereafter, he was permitted to make multiple claims only if they differed one from another and were not "unduly" multiplied.

The Commissioner of Patents further eroded an inventor's statutory right by adopting an interpretative procedure to guide patent examiners in the consideration of applications of an inventor, which undertook to arrogate unto the examiners *carte blanche* authority to reject all claims of an inventor, particularly pointing out and distinctly claiming the subject matter which he regarded as his invention, if the examiner was of the opinion that a larger number of claims were made than were necessary to cover the invention, *viz.*:

An unreasonable number of claims; that is unreasonable in view of the nature and scope of applicant's invention and the state of the art, affords a basis for rejection on the ground of *multiplicity*. A rejection on this ground shall include *all the claims* [emphasis added] in the case inasmuch as it relates to confusion of the issue. Manual of Patent Examining Procedure, § 706.03(1).

This court properly struck down the efficacy of that procedure nearly 30 years ago, when it stated:

We think it proper to observe * * * that the mere fact that a larger number of claims are made than are necessary to cover the invention is not sufficient to warrant rejection upon the ground of undue multiplicity of claims. * * * In re Savage, 110 F.2d 680, 27 CCPA 1048 (1940).

Some 17 years afterward, that rationale was accentuated for the court by Judge Rich with the more generalized observation that:

The patent statutes give to inventors the right to a patent upon compliance with their provisions, and neither the rules promulgated by the Patent Office nor the interpretation placed upon them can detract from those rights. 35 U.S.C. § 6.

Under 35 U.S.C. § 102 an applicant is "entitled to a patent unless" it is shown that one or another of the prohibitory provisions therein, or elsewhere in the statute, applies.

In re Stempel, 241 F.2d 755, 760, 44 CCPA 820, 826 (1957).

In the interim, the Patent Office Board of Appeals declined to affirm the rejection of a patent application on the ground of undue multiplicity, because there was " * * * no showing that the number of claims leads to confusion." Ex parte Barnhill, 68 USPQ 81 (1945). The board cited In re Savage, *supra,* in which we had also stated that rejection of a patent application on the ground of undue multiplicity was appropriate, only where the multiplied claims are of a character " * * * the net result of which is to

confuse, rather than to clarify, the issues relative to an alleged imrovement, which, it is claimed, involves invention."

Even after we departed the rule of In re Savage, *supra,* and implied judicial approval of the aforementioned interpretative procedure, *supra,* in In re Chandler, *supra,* the administrative board continued, albeit reluctantly, to follow In re Savage, *supra,* viz.:

> We do not wish to encourage the practice of presenting an unduly *large number of claims* in a patent application as it *imposes a great* burden on the *examiner* to examine the same. *Where, as here, the claimed subject matter has been determined to be patentable and there does not appear to be any uncertainty or confusion in the mind of the examiner as to what the claims cover,* we are of the opinion that in the interest of expediency *the application should have been allowed.* * * *
>
> We have no uncertainty regarding a clear understanding of the claimed subject matter and in view of all the circumstances find the rejection to be unsustainable. [Emphasis added.] Ex parte King and Adolphson, 144 USPQ 600 (1964).

The Supreme Court has made it clear that:

> The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make laws * * * but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity.

Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 134, 56 S.Ct. 397, 400, 80 L.Ed. 528, 531 (headnote 2), (1936), cited and quoted from in Dixon v. United States, 381 U.S. 68, 74, 85 S.Ct. 1301, 14 L.Ed.2d 223, 228 [5] (and see cases collected at fn. 7) (1965). In dealing with the effort of another administrative agency to make, by rule and regulation, 18 U.S.C. § 1304 a crime, a unanimous Supreme Court observed that, while the agency could aid in implementing by either general rule or by individual decisions the applicable statute under which it administered a statute, " * * * the Commissioner's power in this respect is limited by the scope of the statute. Unless the 'giveaway' programs involved here are illegal under § 1304, the Commission cannot employ the statute to make them so by agency action." F.C.C. v. American Broadcasting Co., 347 U.S. 284, 290, 74 S.Ct. 593, 597, 98 L.Ed. 699, 705–706 (headnote 2), (1954).

In like manner, the Commissioner of Patents can aid in implementing 35 USC 112 by either general rule or by individual decisions; but his power in this respect is limited by the scope of that statute. Even if the Patent Office may reject claims in a patent application which result in confusion, rather than in greater clarification, of the claims to an invention, In re Savage, *supra,* the scope of 35 U.S.C. § 112 does not authorize the wholesale rejection by agency action of all an inventor's claims, merely because a patent examiner deems overly burdensome the examining of a larger number of claims than he considers reasonable, in view of the nature and scope of the applicant's invention and the state of the art.

To permit such is to encourage government by men, rather than by law. An inventor is not permitted by law to monopolize his discovery in whatever manner he may prefer. He must make application to acquire his right of monopoly in accordance with law. His application must necessarily be considered by a patent examiner. The patent examiner, too, is not permitted by law to approve or reject a patent application in whatever manner he may prefer, but by law and valid regulation. If a patent examiner departs the law and such regulations, the only relief then available to the applicant is by appeal to the courts. 35 USC chap-

ter 13, Butterworth v. United States, 112 U.S. 50, 5 S.Ct. 25, 28 L.Ed. 656, 660–662 (1884), construing and applying earlier provisions of these statutes; In re Hien, 166 U.S. 432, 17 S.Ct. 624, 41 L.Ed. 1066, 1069 (1897); Cochrane v. Deener, 94 U.S. 780, 24 L.Ed. 139, 140 (1877). All questions involved in the application for a patent may be reviewed by the courts. Gardner v. Herz, 118 U.S. 180, 6 S.Ct. 1027, 30 L.Ed. 158 (1886); Reckendorfer v. Faber, 92 U.S. 347, 23 L. Ed. 719 (1897). Where any divergence of views between the courts and the Patent Office proceeds from a different interpretation of the applicable statutes, the views of the Patent Office must be subordinated to those of the courts.

*Steinmetz, supra,* 192 U.S. 543, 24 S.Ct. 416, 48 L.Ed. at 562.

If this and similar courts fail to respond to pleas of inventors that patent examinations be accomplished harmoniously with the will of the Congress as expressed in statutes, there is in the offing a time when applications for patents will be approved or rejected on the basis of administrative regulation and procedural instruction. This is an unhappy prospect in a nation where men undertake to govern themselves by law. And it is for these reasons that I have urged that the misconception of In re Chandler, *supra,* not be compounded here, but that the rule of In re Savage, *supra,* be reaffirmed.