McDaid *et al.*, *Townsite Trustees*, v. Territory *ex rel. Smith et al.*

[*Opinion Filed July 1, 1892.*]

1. MANDAMUS— *To Townsite Trustees—Authority of Territorial Courts.* —The organic act of the Territory of Oklahoma, (25 Stat. at Large, p. 85,) conferring upon the Territorial courts chancerv as well as common law jurisdiction, and conferring upon them the right to issue writs of mandamus in all cases authorized by law. allows the issue of a writ to compel townsite tiustees to execute a deed for a lot to one of several contestants, whom they have decided is entitled to a deed. and from whom the deed is witheld out of deference merely to the instructions of the Secretary of the Interior that the parties are entitled to an appeal from said decision.    *Mc Intire v. Wood*, 7 Cranch, 564; and *McClung v. Silliman*, 6 Wheat. 599, distinguished.)

2. APPEAL FROM DECISION OF TRUSTEES.—Act Cong. May 14, 1890. (26 Stat. at Large, 109,) entitled, "An Act to Provide for Townsite Entries in * * * Oklahoma and for Other Purposes,") declares that certain of the lands actually occupied for purposes of trade and business may be entered as townsites "for the several use and benefit of the occupants" by three trustees appointed by the Secretary of the Interior, who shall provide regulations for the proper execution of the trust; that lands not so disposed of shall be sold for the benefit of the municipality; and that "when final entry is made, the title of the United States to the land covered by such entry shall be conveyed to said trustees for the uses and purposes herein provided." *Held*, that after the issue of a patent to the trustees no appeal can be taken to the general land office or to the Secretary of the Interior from a decision of the trustees awarding certain lands to one of several contestants, since the title has then already passed from the government, nor can the Secretary provide by rule for an appeal in such cases on account of the supervision with which he is charged by Rev. Stat. §§ 441, 442, 453, over public land officers.   CLARK, J., dissenting. (*Snyder v. Sickles*, 98 U. S. 210, distinguished.   *Moore v. Robbins*, 96 U. S. 530, followed.)

*Appeal from the District Court of Logan County, Hon. E. B. Green, Judge.*

Petition in the name of the Territory *ex rel.* Winfield S. Smith and Stephen H. Bradley for writ of mandamus to Daniel J. McDaid, William H. Merriweather and John H. Shanklin, comprising board No. 1, town-

site trustees, to compel defendants to execute a deed
to certain land. Judgment for relators. Defendants.
appeal. Affirmed.

*Horace Speed*, for appellants.

*H. S. Cunningham*, for appellees.

The opinion of the court was delivered by

BURFORD, J. : The appellees filed their petition in
the district court of Logan county, in which they
alleged substantially, that the appellants were the-
duly appointed, qualified and acting board of trustees.
for the townsite of Guthrie, Oklahoma, under the pro-
visions of the act of congress, approved May 14, 1890;.
(26 Stat. 109.)

That on the 2nd day of August, 1890, said trustees
entered the E. $\frac{1}{2}$ of sec. 8, in T. 16, N. range 2 W., in
Ok. Ty., upon which tract is situated the townsite of
Guthrie, and the said townsite was. laid off into lots,
blocks, squares, streets and alleys, and the lots duly
assessed for the expense of executing said trust

That on Sept. 1, 1890, a patent was duly executed
by the United States through its president, Benjamin
Harrison, by which said tract was conveyed to said·
trustees, aforesaid, in trust for the several use and bene-.
fit of the occupants thereof, according to their respec-
tive interests, which said patent was by said trustees
duly recorded in the office of the county clerk of Logan·
county on the 8th day of Dec., 1890..

That at the time said entry was made and since the·
22nd day of April, 1889, the appellees were and had
been *bona fide* residents on and occupants of lots 4 and·
5, in block 56, of the townsite of Guthrie, which lots·
were a part of the lands embraced. in said entry and·
patent aforesaid.

The appellees filed their claim to· said lots with said

board of trustees, as did also one John M. Galloway who claimed to be the legal occupant thereof; that said Galloway having died his heirs were permitted to prosecute his claim to said lots.    That said trustees set said matter for hearing as between appellees and the heirs of Galloway, and after hearing the evidence in said cause, said trustees made and entered the following judgment and decree:

"From the testimony produced on the trial of the cause and from all the circumstances surrounding the case, we deem the claimants, Winfield S. Smith and Stephen H. Bradley, entitled under the law to the occupancy of the lots in dispute and to a conveyance from the trustees.    Wherefore it is ordered that a deed be executed to them jointly for lots 4 and 5 in block 56."

Which decree was reduced to writing and signed by said trustees, on the 6th day of April, 1891.

That on the 25th day of April, 1891, appellees tendered to said trustees the full amount of costs assessed against said lots and demanded a deed from said trustees, which they refused to sign or deliver, for the reason that Galloway's heirs had appealed from their decision to the commissioner of the general land office.

They further allege that the said lots are of great rental value; that Galloway's heirs are in possession collecting the rents and profits, and that they are insolvent, and they have no adequate legal remedy.

And they pray that a writ of mandate issue, commanding said trustees to accept the fees tendered and to execute a joint deed for said lots to the relators, Bradley and Smith, pursuant to the award in their favor.

The appellants filed an answer to this petition, in which they admit all the material allegations, but attempts to avoid the same by alleging that they were acting under the instructions of the secretary of the Interior, who had prescribed rules and regulations, directing that any person aggrieved by their decision should

be allowed an appeal to the commissioner of the general land office, and that from said decision in favor of appellees an appeal had been taken and was then pending and undisposed of.

The appellees demurred to this answer for want of sufficient facts to constitute a defense, and the demurrer was sustained by the court and exception duly taken by appellants.

Appellants then moved to dismiss said cause for the reason that the court had no jurisdiction of the subject matter of the action. This motion was overruled, to which ruling appellants accepted, and thereupon elected to stand upon their demurrer and motion to dismiss.

Whereupon the court rendered judgment against appellants and ordered them to forthwith make a deed to appellees, for said lots, and deliver same, and that a peremptory writ of mandate issue to them.

From this judgment said trustees appealed to this court, and assign as error, the following specifications:

"1. The complaint does not state facts sufficient to constitute a course of action.

"2. The court had no jurisdiction of the subject matter of the action.

"3. The court erred in sustaining the demurrer to the answer of appellants.

"4. The court erred in overruling the motion of the defendants to dismiss the action."

All the questions presented by the record are embraced in the 3rd and 4th assignments of error.

We will treat these questions in the inverse order in which they are presented and consider, *first*, the question of the jurisdiction of the trial court.

The organic act of the Territory of Oklahoma, (26, Statutes at large, 85,) provides,

"That the judicial power of said territory shall be vested in a Supreme Court, district courts, ect., * *

The jurisdiction of the several courts herein provided for both appellate and original shall be limited by law,. * * * and the said Supreme and district courts, respectively shall possess chancery as well as common law jurisdiction, and authority. for redress of all wrongs committed against the constitution or laws of the United States or of the territory affecting persons or property, * * * * * * Said territory shall be divided into three judicial districts, and a district court. shall be held in each county in said district thereof by one of the justices of the Supreme Court. * * * * The Supreme Court shall define said judicial districts, and shall fix the time and place at each county seat in each district when the district court shall be held, and designate the judge who shall preside therein, * * * and each of said district courts shall have and exercise, exclusive of any court heretofore established, the same jurisdiction in all cases arising under the constitution and laws of the United States as is vested in the circuit and district courts of the United States. * * * * The said Supreme and district courts of said territory, and the respective judges thereof, shall and may grant,. *writs of mandamus* · and *habeus corpus* in all cases. authorized by law."

It will be observed that congress has vested in the district courts of the territory, special authority to grant writs of mandamus, and has also conferred upon them. full common law powers and jurisdiction,. with the special right to grant writs of mandamus in all cases author-- ized by the common law or any law of the United States then in force.

If the petitioners were, at the common law, entitled to this remedy, then the district court of the territory. has the power to grant and issue· the writ of man- damus. (*United States v. Chenney*, 102, U. S. 378.)·

We must therefore consider this writ as it was known· at the common law with respect to· its object and pur- pose. It is a writ in England, issuing out of the king's. bench in the name of the king, and is called a perroga- tive writ, but considered a writ of right and. is·directed·

to some person, officer, corporation, or inferior court, requiring them to do some particular thing therein specified, which appertains to their duty or office, and which is supposed to be consonant to right and justice, and where there is no other adequate specific remedy. Such a writ, and for such a purpose, would seem to be peculiarly appropriate in this case. The right claimed is just, and is established by the judgment and decree of the special tribunal, created for the purpose and authorized by law to determine that right. The duty required to be done is clear and specific, and there is no other adequate remedy.

The Supreme Court of the United States in construing and defining the powers and jurisdiction of the circuit court of the District of Columbia held that by reason of said court possessing common law powers and jurisdiction, that it had the authority to issue writs of mandamus. (*Kendall vs. United States*, 12 pet. 524.)

It is contended by appellants that they are Federal officers and that the court has no power to issue a writ of mandamus requiring them to perform a duty imposed upon them by a United States law, and in support of this position we are cited the cases of *McIntyre v. Wood*, 7, Cranch, 504; and *McClung v. Sillimon*, 6, Wheaton, 349; but the decisions in the above cases turned upon the powers and jurisdiction of the circuit courts of the United States in the several states, and in the latter case of *Kendall v. United States*, 12 Pet. 524, the court cites, reviews and distinguishes the two former cases, and others, and holds that the authority to issue a writ of mandamus to an officer of the United States, commanding him to perform a specific act required by law, is within the judicial powers of the United States and constitution; but the whole of that power has not been vested in the circuit courts of the

United States, in th several states and that there is nothing growing out of the official character of a party that will exempt him from this writ, if the act to be performed is merely a ministerial one.

Congress has conferred upon the district courts of this Territory the whole judicial power vested in the United States and constitution in this particular; and their powers and jurisdiction are even more extensive than that of the district and circuit courts of the United States.

That mandamus will lie to compel a Federal officer to perform a duty not involving the exercise of judgment or discretion is now well settled by the decisions of the Supreme Court of the United States.

*United States ex rel. v. Schurz*, 102 U. S., 378; *Marberry v. Madison*, 1 Cranch, 537; *Boynton v. Blaine*, 139 U. S., 306; *Butterworth v. United States*, 112 U. S., 50.

In the case at bar the trustees had fully exercised their judgment and discretion when they decided that the appellees were entitled to a deed. The duty to prepare it, sign it and deliver it to the relators were all purely ministerial. This duty they failed and refused to perform, merely out of deference to the instructions of the Secretary of the Interior, that the parties were entitled to an appeal from said decision.

Counsel for appellants contend that our courts stand in the same relation to the Federal government and its officers as the courts of the several states, and as it was held in the case of *McClung v. Sillimon*, 6 Wheaton, 598, that a state court could not mandamus a Federal officer, for the reason that such officer is subject only to the power that created him, therefore the trial court in this case has no such authority. The case relied upon is not applicable and cannot control in the case at bar.

The courts of this Territory are created by and de-

rive their powers from the Federal government, and whether sitting as Territorial or as Federal courts, they derive their powers, authority and jurisdiction from the constitution and laws of the United States. And conceding, without deciding, that the townsite trustees are Federal officers, they, as such trustees or officers, and the trial court, were created by the same controlling power, and the rule as to the authority of state courts over such officers is not applicable.

The next assignment of error to be considered involves the sufficiency of appellants' answer as tested by the demurrer, and this presents the paramount and controlling question in this case, viz: Whether there exists a right of appeal to the commissioner of the general land office, or Secretary of the Interior, from the decision and judgment of the townsite trustees awarding the several lots to the occupants thereof as found and determined by them?

The appellants, as townsite trustees were appointed by the Hon. Secretary of the Interior, pursuant to the provisions of the act of Congress approved May 14, 1890. (26 Statute at Large, 109, entitled ''An Act to Provide for Townsite Entries of Lands in What is Known as Oklahoma, and for Other Purposes.)

The first section of said act provides:

''That so much of the public lands situate in the Territory of Oklahoma, now open to settlement, as may be necessary to embrace all the legal sub-divisions covered by actual occupancy for purposes of trade and business, not exceeding twelve hundred and eighty acres in each case, may be entered as townsites, *for the several use and benefit of the occupants thereof*, by three trustees to be appointed by the Secretary of the Interior for that purpose, such entry to be made under the provisions of section twenty-three hundred and eighty seven of the Revised Statutes as near as may be; and when such entry shall have been made the Secretary of the Interior shall provide regulations for the proper execution of the

trust by such trustees, including the survey of the land into streets, alleys, squares, blocks and lots when necessary, or the approval of such survey as may already have been made by the inhabitants thereof, the assessment upon the lots of such sum as may be necessary to pay for the lands embraced in such townsite, costs of survey, conveyance of. lots and other necessary expenses, including compensation of trustees."

Sections 2 and 3 refer to the qualifications of claimants to lots and what may be taken as evidence of occupancy.

Section 4 provides:

"That all lots not disposed of as hereinbefore provided for shall be sold under the direction of the Secretary of the Interior for the benefit of the municipal government of any such town, or the same or any part thereof may be reserved for public use as sites for public buildings, or for the purpose of parks, if in the judgment of the Secretary such reservation woı 1 l be for the public interest, and the Secretary shall execute proper conveyances to carry out the provisions of this section."

Section 5 makes certain provisions of the townsite laws of the state of Kansas applicable to govern the trustees in the performance of their duties.

Section 6, among other things, provides:

"That all applications heretofore filed in the proper land office shall have the same force and effect as if made under the provisions of this act, and upon the application of the trustees herein provided for, such entries shall be prosecuted to final issue in the names of such trustees, without other formality, and when final entry is made *the title of the United States to the land covered by such entry shall be conveyed to said trustees for the uses and purposes herein provided.*"

Section 7 gives the trustees power to administer oaths, to hear and determine all controversies arising in the execution of the trust, and requires them to keep a record of their proceedings, execute conveyances duly acknowledged, etc., etc.

It will be observed that this act itself no, where pro-

vides for any appeal from the action of the trustees, but it is contended that the Secretary of the Interior has the authority to provide by rule for an appeal, and that on June 18, 1890, the Secretary promulgated a set of rules and regulations for the guidance of said trustees in the execution of their trust. Rule 13, of which, is as follows:

"Any person feeling aggrieved by your judgment may, within ten days after notice thereof, appeal to the commissioner of the general land office under the rules, (except as to time) as provided for appeals from the opinions of registers and receivers, and if either party is dissatisfied with the conclusions of said commissioner in the case, he may still further prosecute an appeal within ten days from notice thereof to the Secretary of the Interior upon like terms and conditions and under the same rules that appeals are now regulated by and taken in adversary proceedings from the commissioner to the Secretary, except as modified by the time within which the appeal is to be taken." (10 L. D., 670.)

It is claimed that the Secretary has the authority to prescribe this rule by virtue of (§§) 441, 442 and 453 Revised Statutes, United States, by which he is charged with the supervision of the public officers relating to public lands.

In the case of *Snyder v. Sickles*, 98 U. S., 210, it was held that the Secretary has the power under these statutes to supervise all matters relating to public lands, including appeals in all cases.

This decision is in harmony with our views in this case, but there is a clear distinction between the case ruled on by the court in *Snyder v. Sickles* and the case at bar.

The powers of the Secretary of the Interior, as prescribed by statute and defined by the court in the case last cited, relate solely to *public lands*, the title to which is still in the United States.

It is a well established principle of law, affirmed by

numerous decisions of the Supreme Court of the United States that the courts will not interfere with the officers of the government while in the discharge of their duties in disposing of the public lands either by injunction or mandamus. (*Marquerz vs. Frisbie*, 101 U. S., 473,)

And it is equally as well settled that after patent issues the title of the United States passes and the executive departments and land officers lose all control over the lands embraced in the patent.

Mr. Justice Miller, speaking for the court in *Moore v. Robbins*, 96 U., S., 530, defines the law as follows:

While conceding for the present to the fullest extent, that when there is a question of contested right between private parties to receive from the United States a patent for any part of the public land, it belongs to the head of the land department to decide that question. It is equally clear that when the patent has been awarded to one of the contestants, and has been issued and delivered and accepted, all right to control the title or to decide on the right to the title, has passed from the land office.

"Not only has it passed from the land office, but it has passed from the executive department of the government.

"A moment's consideration will show that this must, in the nature of things, be so.

"We are speaking now of a case in which the officers of the department have acted within the scope of their authority. The offices of register and receiver are created mainly for the purpose of supervising the sales of public lands, and it is a part of their daily business to decide when a party has, by purchase, preemption, or any other recognized mode, established a right to receive from the government a title to any part of the public domain. This decision is subject to an appeal to the Secretary, if taken in time. But if no such appeal is taken, and the patent issued under the seal of the United States, and signed by the President, is delivered to and accepted by the party, the title of the United States passes with this delivery. With the title

passes all authority or control of the executive depart-
ment over the land and over the title which it has con-
veyed.

"The functions of the department necessarily close
when the title has passed from the goverment.    And
the title does so pass in every instance where under the
decisions of the officers having authority in the matter
a conveyance generally called a patent has been signed
by the President and sealed and delivered to and ac-
cepted by the grantee.    It is a matter of course that
after this is done, neither the Secretary nor any other
executive officer can entertain an appeal.    He is abso-
lutely without authority."

The foregoing opinion is directly in point and decisive
of the case under consideration.    The only duty incum-
bent upon the officers of the land department as pre-
scribed by the act of May 14, 1890, was, after the ap-
pointment of the trustees and prescribing rules to gov-
ern them in the discharge of their trust, to determine
and decide whether or not the lands embraced in their
townsite application were settled upon and occupied
for purposes of trade and business; having determined
this, and that there was no prior valid existing adverse
right, it was the duty of the department to allow the
entry and issue a patent to the trustees conveying to
them the title of the United States in trust for the use
and benefit of the occupants of said lands as their sev-
eral rights might appear, and having issued and deliv-
ered the patent, executive control over the lands em-
braced in the patent closed, and the officers had no
further authority or control over the title, except as
might be given by the special act of May 14, 1890.

The Secretary had the authority under his general
powers and duties to prescribe rules to govern the trus-
tees in making entry and purchase of said lands for
townsite purposes prior to patent; but when patent is-
sued his general authority ceased, and but for a special
authority given in the act of May 14, he would have

been without authority to further direct the trustees. But it is specially provided in § 1 of said act, that *after* the entry shall have been made the Secretary may pro-provide regulations for the proper execution of this trust by such trustees. Hence the Secretary gets his authority in this particular instance to provide regulations for guidance of trustees in discharge of their duties *after* title has passed from the government, from this special act, and not from the general statutes prescribing his authority as head of the land department. And the authority to prescribe such regulations cannot be extended beyond the terms of the act, and are limited to rules for the survey of the land into blocks, squares, streets, alleys and lots; the assessments upon the lots of such sum as may be necessary to pay for the lands, costs of survey, conveyance of lots, compensation of trustees and other expenses; and such other rules as might regulate such matters as were reasonably incident to their duties as townsite trustees.

The right of appeal does not exist in any instance as a matter of right, but is a creation of statute.

The Townsite act in question specifically provides that when the trustees shall make entry of any lands for townsite purposes *the title of the United States to the land covered by such enty shall be conveyed to said trustees for the uses and benefits provided in this act.* This conveyance was made by patent. The government received the purchase money for the land, delivered the patent and parted with all control over the title. The trustees held the title in trust for the legal occupants of the several lots, and it was their duty to determine under the law and the regulations prescribed by the Secretary, who the legal occupants were at the date of their entry, and when they had so determined, to convey the legal title to such person.

They being trustees for the occupants of the several

lots, it followed as a matter of law, that if any lots should not be occupied there would be no one to take the legal title from them, and the trust would fail for want of a *cestui que trust;* in which event the un-claimed lots would have reverted to the grantor, the United States. Congress foresaw this possible contin- · gency, and as a precautionary measure provided that the unoccupied and undisposed of lots should be disposed of by the Secretary of the Interior for the benefit of the municipality. The Secretary is the head of the land department; the government had received full compen-sation for the land, and it was not the purpose of con-gress under this act to allow any of such lands to re-vert to the government because no one had claimed a particular lot; hence this wise precaution of authorizing the head of the land department by suitable convey-ance, to transfer all such lots to the town. But this provision certainly never was intended as contemplat-ing an appeal to the department on the question be-tween adverse claimants to lots.

This construction is in harmony with the general pol-icy of the government in reference to town lot contro-versies as evidenced by the several enactments of con-gress on such subjects.

They have by divers statutes provided for townsite entries by probate and county judges, by mayors and trustees of cities and towns, by special trustees, and by other persons, but never in any statute has there been a provision for trying the title to town lots in the gen-eral land office, or before the Secretary of the Interior; nor do we find where it has ever been claimed by the department before that they had such right. It is a well established rule that statutes should be construed according to the legislative intent. It appears from the original bill introduced for the act of May 14, 1890, that an appeal was therein provided for; but this pro-

vision was stricken out in committee and the bill became a law without such provision. It is evident to us that congress never intended to burden the general land office or the Secretary of the Interior with several thousand town lot contests, but it was intended that the adjudication by the special tribunal created for the purpose of settling such controversies should be final, except in so far as the courts might properly review their acts and decisions.

When an appeal is directed by the Secretary which is unauthorized by law, the appeal is of no effect, and mandamus will lie to compel the proper officer to perform his duty notwithstanding such appeal. (*Butterworth v. Hoe*, 112 U. S. 50).

We find no error in the action of the trial court.

We are of the opinion that the relators are entitled to the deed which they demanded of appellants, and that the writ of mandamus by the district court is the appropriate remedy to enforce that right.

The judgment of the district court is affirmed at the cost of appellants.

Green, C. J., concurs.

---

Dissenting opinion by

CLARK, J.: The defendants, Daniel J. McDaid, *et al*, as townsite trustees, under the act of May 14, 1890, and u der R. S. 2387 and 2388, entered the townsite of Guthrie, and in discharge of their duties awarded certain lots to the relators; from that award the heirs of John M. Galloway appealed to the commissioner of the general land office.

This action was brought to compel the trustees to convey said lots to said relators.

The important question in the case is, does an appeal lie to the commissioner of the general land office?

These defendants are certainly officers of the United States government, connected with the interior department, appointed by the Secretary of the Interior, and have under the law certain important duties to discharge.

The question arises, how far has the head of that department supervision over these officers and their acts? Under the law it seems that they hold in trust not the whole land, but perhaps certain interests in these lands for the use of others; and that the Secretary of the Interior has power to dispose of certain portions of these lands, as his judgment may dictate; and that it is his duty to prescribe rules and regulations governing these trustees in the discharge of the duties devolving upon them.

Can he investigate and see whether these appointees of his dispose of these lands pursuant to law, and pursuant to the regulations prescribed by himself and to the proper persons ? Or must he leave it to the courts alone to correct the errors of these appointees ?

Clearly, these errors can be corrected by the courts in a proper case; but can he, on his own motion, or on an appeal, review any judgment of these trustees, however gross ? If he can, in any particular, an appeal lies to the commissioner and from the commissioner to him.

A portion of § 2387, touching the entry of townsites, might cast some light upon the matter. It reads as follows:

"It is lawful for * * * the corporate authorities, or for the judge of the county court * * * to enter the land so settled and occupied in trust for the several uses and benefits of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the state or territory in which the same may be situated."

Under this section the title and the proceeds of the sales of lots, and the mode of conducting the sales of lots, and the conveyance of lots, are to be conducted under regulations to be prescribed by the legislative authority of the state or territory where situated.

So far as the government is concerned, after the issuing of the patents under this section, its connection is ended with the land in question.

But the act of May 14, 1890, creates a new set of officers appointed by the Secretary of the Interior, to perform their duties under rules and regulations to be prescribed by him.

Section 1 reserves to the Secretary of the Interior the power to prescribe rules and regulations for the proper execution of the trust, by such trustees, including the survey of the land into streets, alleys, squares and blocks and lots, "or the approval of such survey as may have been already made by the inhabitants thereof; the assessment upon the lots of such sum as may be necessary to pay for the lands included in such townsite, costs of survey, conveyance of lots and other necessary expenses, including compensation of trustees."

It will hardly be denied that the Secretary of the Interior can, on his own motion, or on appeal, set aside any survey made or adopted, since the opinion in *Knight v. U. S. Land Association*, 142 U. S. 177. For a like reason he could set aside an unjust or unequal assessment. If he, on appeal, can correct their mistakes in such matters, why may he not correct their mistakes in conveyances, and, as the general superintending agent, set aside their finding and see that the lots are conveyed to the proper parties?

These officers are paid by the United States government in the first instance at least. It is true, that certain fees are to be collected by them the same as fees are to be collected by registers and receivers.

Their per diem is fixed by the department. (§ 7.) They unquestionably could be removed by the power that appointed them, and cannot be removed by the territorial authorities.

They are responsible, and have to account to the former, and not to the latter.

It is reasonable, then, to infer, that the act does not vest the entire title in the trustees. Their superior officer, the Secretary of the Interior, still has the control, for it leaves in his discretion the selling and setting apart of certain indefinite portions. Certain indefinite portions may be sold under his directions, and he may reserve certain parts for public use; and the Secretary must execute conveyances. (§ 4.)

If the government has been divested of the title to these townsites, and the title vested in the trustees, why should the Secretary execute conveyances of certain portions of these townsites, and why should other portions be sold under the directions of the Secretary? If the government is divested of the fee title and the title is vested in private individuals, why are the records and proceedings of these boards to be filed in the general land office?

The government has no interest in the future transfers of the property after the patent issued, if it was entirely divested of title, and of the power to dispose of the lots at the time the patent issued to the trustees.

It has a very different interest in those lands, from what it has in townsites, when the title has been vested in a mayor or a county judge. In the latter case it takes no notice of the actions of the trustees, but leaves the local authorities to adjust their mistakes.

If the moment the patent was issued to the trustees the government was divested of title, the lands must have that moment become taxable and liable to be sold

on execution. It will hardly be claimed that such is the case.

We submit that the only correct position is that the trustees are merely agents of the government for the purpose of divesting it of its title to these small subdivisions of the public lands.

Under the practice of the land department, which has been recognized by the Supreme Court as law, the Secretary of the Interior has been recognized as the supervising agent of the government. It has always been recognized as his duty to see that justice be done claimants. He is the agent and trustee of the government; has supervised all the acts of the officials below him.

I do not understand that in such matters an appeal is only a statutory remedy.

By § 2478 of the R. S., the commissioner of the general land office, under the direction of the Secretary of the Interior, is authorized to enforce and carry into execution, by appropriate regulations, every part of the provisions of this title not otherwise specially provided for ''(public lands)''.

In 142 U. S., 177, *Knight v. U. S. Land Association,* the court quoted approvingly the 5th Land D., 494, that held as follows:

''Such supervision may be exercised by direct orders or by review on appeals. The mode in which the supervision shall be exercised in the absence of statutory directions may be prescribed by such rules and regulations as the Secretary may adopt.''

In *Buena Vista Co. v. Iowa Fall & Sioux City R. R.,* 112 U. S., 165, a question arose whether an appeal would lie from the decision of the commissioner of the general land office under the act of March 5, 1872, donating certain swamp lands in certain counties in Iowa. The commissioner was to allow or disallow the selections.

Although the statute was silent, and it apparently made the decision of the commissioner of the general land office final, yet the court held that an appeal lay to the Secretary of the Interior.

The court in 142 U. S. 181, Supra, held that an appeal lay, and that,

" The Secretary is the guardian of the people of the United States over the public lands. The obligation of his oath of office obliges him to see that the law is carried out, and that none of the public domain is wasted or disposed of to a party not entitled to it.' (Page 182).

There is nowhere any express power given to the Secretary of the Interior to hear and determine appeals from the commissioner of pensions; yet the power is exercised daily without question.

The same remarks apply to the powers of the Secretary of the Interior to supervise and control the management of the bureau of Indian affairs, which power, as far as we are advised, has never been questioned.

Page 182. "But if there was any doubt of the existence of such power in the Secretary of the Interior, as an original proposition, still the exercise of it for so long a period,—going back to the organization of that department,—without question, ought to be considered as conclusive as to the existence of the power. That whole case is worthy of careful consideration in the search for the powers of the Secretary of the Interior."

We are not left entirely to these general deductions. Analagous legislation has received a like liberal construction by the departments and by the courts. The right of pre-emption (§ 2263 R. S.) was to be allowed agreeably to rules to be prescribed by the Secretary of the Interior, but no appeal was provided for except where two persons settle upon the same land (2273.)

Neither is there a special statutory provision for appeal in the homestead law, yet the uniform practice has been to allow appeals in all cases where applicants for

titles to public lands feel aggrieved by the action of the local officers, and their action has been recognized uniformly by the courts as being within the scope of the authority, properly exercised by the interior department. (*United States v. McDaniels*, 7 Pet. 114.)

The construction of the act of May 14, 1890, made by the head of the department charged with its execution, should have great weight with the courts and should not be overturned unless clearly erroneous. (*United States v. Moore*, 95 U. S. 760; *United States v. Philbrick*, 120, U. S. 52; and 132 U. S. 357.)

The position that the government has parted with its whole title is not well taken. The patent is conditional and is made, it seems to me, to officers of the government for the benefit of the occupants; but in determining the beneficiaries the claimant has a right to the decision of the Secretary of the Interior, and has the right to appeal to him.

In the conditional patents issued to Indian allotments under the provisions of § 4, act of February 8, 1887, the right is exercised by the interior department to cancel, annul or change said patents at the discretion of the Secretary of the Interior.

Since it is not to be presumed that jurisdiction would be retained by the Secretary of the Interior, as to a part of such townsites and not as to the whole, I must conclude that an appeal as provided for in paragraph 13 of the circular of instructions (10 L. D. 666), from the decision of said townsite board, will lie, if perfected, as required therein.

Nor should we forget that this action was commenced on the Territorial side of this court.

In the 3d Wallace, p. 236, *Nebraska v. Lockwood*, a question very much like this was before the courts. An information had been filed by the district attorney of the county in the nature of a *quo warranto* on the relation.

of Eleazar Wakely against the defendant, Lockwood, to test his right to the office of associate justice. To the information a demurrer was filed. The demurrer was sustained and the case was carried to the Supreme Court. Justice Swain delivered the opinion. The court quoted approvingly, (6 Wheaton 292, *Miner's Bank v. United States*), wherein it was held that,

"A state court cannot issue a writ of mandamus to an officer of the United States. His conduct can only be controlled by the power that appointed him.

"The people of the territory have no agency in appointing these judges and no power to remove them. The territorial legislature cannot prescribe conditions for the tenure or loss of the office. Such legislation on their part would be a nullity. Impeachment and conviction by them would be futile as to remoral. The right of the territory to prosecute such an information as this would carry with it the power of a motion without the consent of the government from which the appointment was made, This the territory can no more accomplish in one way than another."

Thus spoke the Supreme Court of the United States.

But take another view of this matter. If the trustees should feel themselves constrained to obey the commands of their superior officer, the Secretary of the Interior, and disobey the mandate of this court, they are liable to be imprisoned and fined and mulcted in costs. On the other hand, should they disobey the command of the Secretary of the Interior and obey the mandate of this court they might be removed by that officer.

The whole matter amounts to this: We find ourselves as a Territorial court endeavoring to control a United States office or close it up for not obeying the mandate of this court. This court surely has no such power. It cannot remove the trustees. It cannot imprison for such an offense, and therefore cannot enforce its mandates. It occurs to me that the sheriff, should he at-

8

tempt, in a state, to enforce such a mandate of a supreme court, would be in danger of peing punished for interfering with United States officials.

But take another view of this case. If the title is vested in the trustees for the benefit of others and the United States was entirely divested of title the trustees must convey the title to the *cestui que trust* and to no other person. He must make no mistakes. The beneficiary can bring suit against the grantee of the trustees to have the deed to him declared a trust deed. He can follow his property into the hands of others wherever it may go, but the trustee is also personally liable for his mistake as well as for his frauds. And may he not be compelled to pay the costs of the real party in interest in procuring the title to his property or the return of it?

On the theory of the prosecution the fee title of property worth immense sums of money, has been conveyed in trust to the trustees. They must convey to the real party in interest. Grant that they act honestly, but is that a legal excuse should they convey to the wrong person? The law, neither Territorial nor national, says that they shall be held harmless. In case of a breach of trust the *cestui que trust* is intitled to institute proceedings against the trustees to compel a compensation from them personally for the loss which the trust estate has sustained. (3 Lewin on Trusts, 900; 6 W. & S. 243; 17 Ind. 291.)

If the townsite trustees are not mere agents of the government for the purpose of conveying to the occupants of certain lots the title of the same, by what rule of law does the title of any portion of the land deeded to the trustees revert to the United States? If the government has parted with its title, how does it get it back? Certainly not because of failure of beneficiaries.

Suppose for some cause, as malarial, or climatic, not a *part* of the occupants of lots, but *all*, should abandon

the townsite after the patent had been issued and before any deeds were issued. It surely will not be claimed that the title would revert or escheat to the United States, the creator of the trust, after it has once parted with the title without reservation. In case of failure of beneficiaries, trusts never revert to the author of the trust when he has parted with the whole title. When he has parted with the whole title, he cannot afterwards revoke the trust nor interfere with the management or execution of the trust. (1 Lewin on Trusts, 402; 2 Wash. on R. Pr. 492.)

The legal title is in the trustee and there it remains.

Is this not the real touchstone and test of the construction of that act? By the act, the Secretary of the Interior was to prescribe rules and regulations governing the trustees. They report to him and to no other person. They file their plats, papers and the records of their proceedings with him. He fixes their pay.

Beyond question he can supervise their work in many particulars—set aside the surveys and plats and assessments. The act reserves to him the power to reserve certain tracts, even after patent to the trustees, for public use, and gave to him power to execute deeds to certain tracts. These reservations in case of failure of beneficiaries prevents the title vesting in the trustees and shows that they never had the entire title.

I submit that the most reasonable construction that can be put upon the act of May 14, 1890, is that the trustees held the title for the Government as a matter of convenience; and that the real title was in the United States, and that in case of failure of beneficiaries or occupants for any cause, that the Secretary of the Interior could revoke the patent. If he could revoke the patent he yet has the control of the whole matter and the appeal lies to him. Who, upon any other theory, would accept so great a responsibility for so small a compensation?

Another objection equally fatal is the want of necessary parties defendant.

An issue of law has been joined in this action in which the appellants have as great an interest as they had in the issue of fact in that case before the townsite board. In this proceeding, collatteral to the action before the townsite board, it is sought to determine the rights of parties to an appeal without their presence. It appears on its face, that the townsite board has no real interest in the matter, but that persons, not made parties to this action, claim the title to the property, a transfer of which is herein sought to be commanded; and that such claim of title is adverse to the relators. If the writ of mandamus should be granted, as prayed for, then the right to appeal will be determined and they have no further remedy before the land department, and no method to review the findings of the townsite board except possibly by commencing an action in the district court. These officers do not represent the claimants. They are mere agents for the Government to transfer the title. They might let this action go by default, and thus a proceeding, *ex parte*, so far as the real party in interest is concerned, is made to determine the rights of the heirs of the appellant; or they really may be adverse to the interests of the heirs of said John M. Galloway as might naturally be inferred from their judgment adverse to said heirs, and from their correspondence with the department. They are not the proper persons to protect the interest of the appellants to the commissioner of the general land office.

For these reasons I am forced to conclude that the title does not pass from the government, until the trustees in obedience to the law and instructions of the Secretary, shall have conveyed by deed the lots to the occupants; and that until that shall have been done, the Secretary of the Interior has the entire supervision of the whole matter, and that the judgment of the district court should be reversed.