## THE UNITED STATES, Ex Rel. BERNARDIN

*v.*

## SEYMOUR.

CONSTITUTIONAL LAW; COMMISSIONER OF PATENTS; JURISDICTION.

1. A petition for a writ of *mandamus* to the Commissioner of Patents to compel the issuance of a patent to the petitioner, who had been refused a patent by the Commissioner under a decision of this court rendered on an appeal from the Commissioner, *held* to be the proper method by which to test the constitutionality of the act of Congress vesting in this court the jurisdiction to entertain appeals from the Commissioner of Patents.
2. The fact that a court entertains doubt as to the constitutionality of a statute is of itself sufficient ground for upholding the power of the legislature in enacting the law.
3. Every presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a reasonable doubt.
4. The functions of the Commissioner of Patents are both executive and administrative and judicial; and in matters administrative merely he is under the supervision of the Secretary of the Interior, but when acting judicially his decisions can only be reviewed by the court.
5. That portion of the act of Congress of February 9, 1893 (27 Stat. 434), conferring upon this court jurisdiction to entertain appeals from the Commissioner of Patents in certain cases, is a valid exercise of the constitutional power of Congress.

No. 603. Submitted February 10, 1897. Decided March 1, 1897.

HEARING on an appeal by the relator from a judgment dismissing a petition for a writ of *mandamus* to the Commissioner of Patents. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Benjamin Butterworth* and *Mr. Julian C. Dowell* for the appellant:

1. The granting and issuance of a patent by government

here and elsewhere is, and always has been, an executive act. In harmony with the rest of the world the United States has vested this function in the executive department, by constituting and organizing the Patent Office, which is a branch of the Interior Department. It was once attached to the State Department, and later made a part of the Interior Department, but it has always been a part of an executive branch of the Government. Vol. I, Robinson on Patents, p. 76, Section 48. The Commissioner of Patents acts in an executive capacity in passing upon an application.

2. Vesting in him the duty to hear evidence and determine a course of action thereon, does not constitute the Commissioner a judicial officer. *United States* v. *Ferreira*, 13 How. 40; *United States* v. *Yale Todd*, 13 How. 52, note; *Gordon* v. *United States*, 2 Wall. 561; *People* v. *Railway Co.*, 12 N. Y. Sup. 303; *Insurance Co.* v. *Raymond*, 36 N. W. 474; *In re Kain*, 14 How. 119; *Re Pacific Rwy. Comm.*, 32 Fed. Rep. 255.

It plainly appears from the reasoning of the courts in these decisions that power and authority like that vested in the Commissioner of Patents does not constitute him a judge, or his office a court, in the sense in which those terms are used in the Constitution. The functions of his office are of the same nature as those required of a Commissioner of Internal Revenue. Neither of said officers can properly be regarded a judge. Nor are their duties judicial, though they hear evidence and a high order of judgment and discretion is required of them in estimating values and making proper appraisements, or determining on evidence other questions affecting the rights of persons and property. Both of said offices are executive, as is the office of Commissioner of Patents. The discretion and judgment which any proper system of rating requires, so far as revenue or rate of pension is concerned, is merely incidental to the main purpose of collecting the revenue or deciding what amount shall be allowed and paid as pension.

Neither upon principle nor authority can the Commissioner of Patents be held to be other than an executive officer, or that his quasi-judicial duties are anything more or other than may be devolved upon any executive or ministerial officer.

3. Appellate jurisdiction over the Commissioner of Patents cannot be constitutionally vested in this court, for the reason that no duties can be required of this court that are not judicial, and appeals and writs of error to this court for review must be from judicial tribunals, in other words, from courts established by law under the Constitution. And there is not even a pretence that the Commissioner of Patents is a judge or that his office is a court.

And not only is there a mingling and confusing of the departmental powers of government, but it results in a complete subordination, to the extent that this appellate jurisdiction is exercised, of one department to another; and if in the case at bar an appeal for review will lie from the act of the executive officer known and designated by the law as Commissioner of Patents, where is the line of demarkation between those executive acts which require the exercise of judicial faculties—that is, to hear evidence and pass upon questions affecting rights of property and persons—from which an appeal may be prosecuted, and those executive acts from which no appeal may be allowed? The former cases cannot be limited to those in which official action hinges on conclusions reached after hearing evidence in order to apply the law, for if that was so, there would be very few, if any, acts of any one of the Executive Departments which would not be reviewable by the court on appeal.

4. The Constitution does not permit a confusion of the powers of Government. Neither of the three departments of Government can exercise powers belonging, in their nature, to the others, and this applies to each department alike. Cooley Const. Lim. (6th Ed.), 104, 106; Foster on

Constitution, Sec. 44, p. 302; Hare on Constitution, Vol. 1, pp. 173, 174; Brown on Jurisdiction, Sec. 15, pp. 39–41; *Osborn* v. *Bank,* 9 Wheat. 255; *Kilbourn* v. *Thompson,* 103 U. S. 190; *Sinking Fund Cases,* 99 U. S. 718; *Smith* v. *Adams,* 130 U. S. 173; *Fontain* v. *Ravenel,* 17 How. 369; *Hayburn's Case,* 2 Dall. 409; *United States* v. *Yale Todd,* 13 How. 52; *In re Pacific Rwy. Comm.,* 32 Fed. Rep. 254.

These views are also confirmed by the constitutions of the States, in all of which the powers of sovereignty are carefully divided and apportioned to appropriate depositories. This is done by different language, most of them using simply the concise division of power used in the Constitution of the United States. In many, however, the division is insured by a clause forbidding the exercise by any one of the powers of either of the others. In New Hampshire, for instance, it is provided that "no person or collection of persons exercising the functions of one department shall assume or discharge the functions of any other." Similar prohibitory sections are found in the constitutions of Massachusetts, Maine, Vermont, New Jersey, Indiana, Illinois, Michigan, Louisiana, Minnesota, Pennsylvania, Maryland, Virginia, West Virginia, Kentucky, Tennessee, Missouri, Alabama, Arkansas, Texas, California, Oregon, Colorado, South Carolina, Georgia, Mississippi, Florida. Other States, however, not having this provision in their constitutions, support the strict division of governmental power.

The decisions under these and other State constitutions are numerous and they uniformily recognize the principle of the separation of the powers of government, regardless of whether that principle is expressly stated in the Constitution. From them we cite the following cases: *In re Splane,* 16 Atl. 481; *Iron Works* v. *Oil Co.,* 15 Atl. 917 (Pa. 1888); *Territory* v. *Stewart,* 23 Pac. 405; *Gregory* v. *State,* 94 Ind. 384; *Tillman* v. *Cocke,* 68 Tenn. 429; *Commissioners* v. *Gwin,* 36 N. E. 242; *Shaultz* v. *McPheeters,* 79 Ind. 373; *Re Sims,* 37 Pac. Rep. 135; *Galesburg* v. *Hawkins,* 75 Ill. 152.

This construction of the language of these articles is in harmony with the ideas current at the period of the adoption of the Constitution, with the principles upon which the Constitution was formed. *Gordon* v. *United States,* 117 U. S. 706.

5. It is an appeal from the executive department to the judicial department. Mr. Justice Matthews, in *Hoe* v. *Butterworth,* 112 U. S. 50, speaks of this proceeding as " in aid of " the proceedings in the Patent Office. This proceeding, however, is not in aid of, but absolutely controls the action in the Patent Office and the result of its proceedings. A proceeding having such an effect cannot be properly said to be merely in aid of. We have abundance of authorities upon the question of the illegality of such an appeal, and also upon the illegality of making the judiciary such aids to the other departments. *United States* v. *Ritchie,* 17 How. 525; *United States* v. *Ferreira,* 13 How. 40; *Gordon* v. *United States,* 117 U. S. 697.

The courts have been equally prompt to decline to be made adjuncts or auxiliary instruments to the other departments, or to commissions and bureaus of those departments. They have insisted that their functions are limited not only to what may be abstractly judicial, but to the concrete and practical duties which the experience of government has determined to be the proper province of a court of justice. They have repeatedly decided that they are confined to questions judicial in their nature, but that that fact alone is not enough to give them jurisdiction. The question must be presented in the form of a case or controversy, and must be one which pertains to the administration of justice by a court rather than incident to legislative or executive duties. They have steadily refused not only to revise the decision of other branches of the Government or intrude upon their proper domain or action, or to stop by injunction or compel by *mandamus* the action of other departments, but they have also refused their assistance by process, when

called upon merely to aid another department or arm thereof to carry out some object properly within the functions of that department. *Re Interstate Comm. Comm.*, 53 Fed. Rep. 476 ; *In Re Pacific Rwy. Comm.*, 32 Fed. Rep. 242; *In Re McLean*, 37 Fed. Rep. 648 ; *Taylor* v. *Commonwealth*, 3 J. J. Marsh. (Ky.) 401.

These are cases, both State and national, in which the extraordinary remedies of *mandamus* and injunction have been asked against the executive department and refused by the courts. The effect of these cases is to hold that this independence is always to be respected, and that a court will not interfere with an executive officer's exercise of discretion, nor will it inquire into the wisdom or justice of his decision or course of action.

This principle of constitutional law is fundamental and so well established as to need no argument. It lies at the foundation of our system of government. If it can be set aside whenever convenience suggests that it be done, that is an end of it as a principle of law.

We find as matter of actual experience that the courts have steadily refused to examine the justice of the individual case, or the degree of political danger that would be incurred by the violation of this principle of Government. *U. S. ex rel. Dunlop* v. *Black*, 128 U. S. 40; *Decatur* v. *Paulding*, 12 .Pet. 513; *Georgia* v. *Stanton*, 6 Wall. 50; *State* v. *Stone*, 25 S. W. 376; *United States* v. *Guthrie*, 17 How. 284; *Gaines* v. *Thompson*, 7 Wall. 347; *Brashear* v. *Mason*, 6 How. 99; *Cherokee Nation* v. *Georgia*, 5 Pet. 183; *Comm. of Patents* v. *Whitely*, 4 Wall. 522.

6. The appeal is to a court. This statute vests the appellate power over an executive officer in this court. There is no intention to constitute the judges of this court a commission for the discharge of executive duties. The language purports to confer appellate power upon this court as a court, and indicates no intention to confer other power. In fact, the authority vested in them is peculiarly described to be

that which was previously vested in the Supreme Court of the District of Columbia, sitting *in banc.* *Gordon* v. *U. S.*, 117 U. S. 697, and *Ferreira* v. *U. S.*, 13 How. 52, are considered authorities that such an act is unconstitutional.

But even if the act did not purport to convey such judicial authority, but purported to convey power upon the court to act in an executive capacity, that construction would invalidate the act for attempting to place upon the courts duties other than judicial. Such an attempt has been decided over and over to be unconstitutional. On this point we cite the cases *United States* v. *Yale Todd,* 13 How. 52, note, and *United States* v. *Ferreira,* 13 How. 52, which is conclusive.

*Mr. Jeremiah M. Wilson* for the appellee:

1. Congress has the implied power to enact laws and prescribe means for the carrying out of express powers conferred by the Constitution, and the courts cannot nullify these laws unless the means so provided are forbidden by the Constitution itself. It is, perhaps, unnecessary to mention at this late day that it is beyond controversy that Congress has the implied power to do whatever is necessary, or deemed by it to be necessary, to carry into effect an express power. *McCulloch* v. *Maryland,* 4 Wheat. 316 ; *Prigg* v. *Pennsylvania,* 16 Pet. 539 ; *Ex parte Yarbrough,* 110 U. S. 651 ; *Gibbons* v. *Ogden,* 9 Wheat. 1.

In the light of the authorities and in the light of reason it is with great confidence assumed that it is left entirely to Congress to designate or appoint the means or instrumentalities to which it will resort to carry into effect the express power, so granted by the Constitution, to secure to inventors the benefits of their discoveries. *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 472.

It is not within the power of any court to criticise these means or instrumentalities or to determine that they are in anywise injurious for trenching upon the power of that other co-ordinate branch of the Government, the judiciary.

Congress has just as much power to invoke the aid of the judge of any court or any judicial tribunal in the exercise of this expressly conferred power as it has to invoke the aid of any administrative or other officer or department of the Government. *McCulloch* v. *Maryland,* 4 Wheat. 423, cited and quoted with approval by the Supreme Court in the recent case of *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 472. It will not be denied that in respect of securing to inventors the exclusive right to their discoveries, Congress could have used the Treasury Department or the State Department or the Department of Justice, as well as the Interior Department, or that it could have created a special tribunal for that purpose, as in the cases of the Interstate Commerce Commission and the Court of Claims, which are merely ancillary or advisory tribunals (except where the power to render final judgment is expressly conferred upon the latter by Congress), or that it could determine controversies arising from interferences by its own action through its own committees; and it by no means follows that, having designated any one of these instrumentalities, it is limited to the use of that particular one. It may use any one of these, or it may use any one in connection with any other. It may, in any way that it conceives to be best calculated to carry into effect such express powers, prescribe any means that in its judgment may be most efficient in the performance thereof. *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 473.

2. Congress can confer upon the courts jurisdiction to hear and determine controversies relating to the issuing of patents in aid of the exercise of the power conferred upon that body by the Constitution. *Butterworth* v. *Hoe,* 112 U. S. 51.

3. The act conferring jurisdiction upon this court to determine cases of interference is clearly within the constitutional power of Congress; but, even if this were doubtful, that doubt must be resolved in favor of the power. Cooley

Const. Lim. 182, note; 3 Am. & Eng. Encyc. L. 673, 674; *Cooper* v. *Telfair*, 4 Dall. 18; *Ogden* v. *Saunders*, 12 Wheat. 470; *Pollock* v. *Loan & Trust Co.*, 157 U. S. 554.

4. A complete remedy is afforded by statute without resort to writ of *mandamus.* By Section 4915 of the Revised Statutes it is provided that any party who may be aggrieved by the decision of the Supreme Court of the District of Columbia, or the Commissioner of Patents, may have his rights adjudicated in a proceeding in equity in the proper court; and thus it appears that a full and complete remedy is afforded without resort to the extraordinary remedy of *mandamus.* *Butterworth* v. *Hoe*, 112 U. S. 50.

Thus it appears that Congress has not only called to its aid the instrumentalities above alluded to, but has expressly conferred upon parties who may consider themselves aggrieved by such decisions the right to go into a court of equity, and there have the whole matter reviewed; and, such being the state of the legislation, the extraordinary writ of *mandamus* to compel the Commissioner to disregard the decision of this court and issue a patent in conformity with his own decision, can not be resorted to except in total disregard of all the principles underlying the right to such a remedy.

The object of a *mandamus* is not to supersede a legal remedy, but rather to supply the want of it. Two prerequisites must exist to warrant a court in granting this extraordinary remedy. First, it must appear that the relator has a clear legal right to the performance of a particular act or duty at the hands of the respondent; and, second, that the law affords no other adequate or specific remedy to secure the enforcement of the right and the performance of the duty which it is sought to coerce. In this sense the remedy may be regarded as of *dernier resort*, to be used when the law affords no other adequate means of relief. High's Extraordinary Legal Remedies, p. 13, Sec. 10, and cases cited; *Kendall* v. *Stokes*, 3 How. 99; *Knox County* v. *Aspinwall*, 24

How. 376 ; *Ex parte Virginia Commissioners*, 112 U. S. 177 ; *Bayard* v. *White*, 127 U. S. 250; *In re Pennsylvania Co.*, 137 U. S. 453; *Morrison, Petitioner;* 147 U. S. 26.

Not only has the relator in the present case an adequate and complete remedy other |than· by *mandamus*, but he has actually invoked that remedy by filing in the Circuit Court of the United States for Indiana a bill in equity, under the provisions of Section 4915 of the Revised Statutes; hence, under all the authorities, the present application for *mandamus* cannot be entertained.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. This is an appeal from a judgment of the Supreme Court of the District of Columbia dismissing a petition for a writ of *mandamus* to the Commissioner of Patents.

The relator, Alfred L. Bernardin, and William H. Northall were parties to an interference proceeding in the Patent Office declared on their respective applications for a patent for an improvement in bottle-sealing devices.

The Commissioner of Patents being of opinion that Bernardin was the first inventor rendered a decision in his favor. [71 O. G. 1159.] On appeal to this court by Northall the decision of the Commissioner was reversed. 7 App. D. C. 452. Bernardin, denying the jurisdiction of this court to entertain an appeal from the decision of the Commissioner, demanded the patent to which he was entitled thereunder. This demand was refused because of the reversal of that decision by this court and the award of priority to Northall. [75 O. G. 1853.]

The sole question to be determined is the jurisdiction of this court to entertain appeals from the Commissioner of Patents, for without setting out the pleadings, it is sufficient to say, that they make a case in which the *mandamus* ought to issue, if Congress had not the power to confer that jurisdiction, under the rule laid down in *Butterworth* v. *Hoe*, 112 U. S. 50.

The argument against the constitutionality of the act of Congress is founded in the complete separation and independence of the powers of government declared in the Constitution.

In the language of Mr. Justice Miller: "It is believed to be one of the chief merits of the American system of written constitutional law, that all the powers entrusted to government, whether State or national, are divided into the three grand departments, the executive, the legislative, and the judicial. That the functions appropriate to each of these branches of government shall be vested in a separate body of public servants, and that the perfection of the system requires that the lines which separate and divide these departments shall be broadly and clearly defined. It is also essential to the successful working of this system that the persons entrusted with power in any one of these branches shall not be permitted to encroach upon the powers confided to the others, but that each shall, by the law of its creation, be limited to the exercise of the powers appropriate to its own department and no other."

After noting several exceptions to the general rule expressly provided in the Constitution, he says again: "In the main, however, that instrument, the model on which are constructed the fundamental laws of the States, has blocked out with singular precision, and in bold lines, in its three primary articles, the allotment of power to the executive, the legislative, and the judicial departments of government. It also remains true, as a general rule, that the powers confided by the Constitution to one of these departments can not be exercised by another." *Kilbourn* v. *Thompson*, 103 U. S. 168, 190.

The contention on behalf of the appellant is therefore that the Commissioner of Patents is an officer of the executive department, clothed with functions and charged with duties, executive in their character, and that the exercise of his judgment and discretion therein is beyond the control

of the judiciary and cannot be conferred thereon by act of the legislative department with the approval of the President.

The question as presented is one of importance, and its rightful determination is a matter of grave doubt. If resolved against the exercise of the jurisdiction, there will doubtless be some embarrassing, if not injurious, consequences, for it has been constantly exercised by the courts of this District since the year 1839, and of late years especially many decisions of the courts upon appeal from the Commissioner of Patents have been carried into effect and accepted as conclusive and final. Notwithstanding the grave doubt that we entertain of the soundness of our judgment, we are not convinced that it is our duty to declare against the validity of the statute conferring the jurisdiction.

The very fact that we entertain doubt is of itself sufficient ground for our action in upholding the power of Congress to enact the law. "It is our duty, when required in the regular course of judicial proceedings, to declare an act of Congress void if not within the legislative power of the United States; but this declaration should never be made except in a clear case. Every possible presumption is in favor of the validity of a statute, and this continues until the contrary is shown beyond a reasonable doubt. One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule." *Sinking Fund Cases,* 99 U. S. 700, 718. See also *Powell* v. *Pennsylvania,* 127 U. S. 678, 684.

The concluding sentences of the foregoing quotation show that the rule therein enounced is founded on the very same principle that lies at the base of the appellant's contention here.

The first act conferring jurisdiction on the court of this District of appeals from the Commissioner of Patents was approved March 3, 1839, and the same has been exercised

10 Ct. App.—21

with some changes in procedure only continuously since that time. During nearly sixty years of existence the validity of the law remained unassailed and unquestioned. Moreover, the validity of this legislation was unmistakably assumed by the Supreme Court of the United States in the very case of *Butterworth* v. *Hoe, supra,* wherein it was held that the express grant of an appeal from the decisions of the Commissioner to the courts precluded the exercise of the appellate jurisdiction claimed by the head of the department to which the Patent Office is attached—namely, the Secretary of the Interior.

In consideration of the importance of the question and the points made in the able argument upon which it has been submitted we think it proper to offer some additional reasons in support of our conclusion.

The Constitution of the United States confers upon Congress the power "to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." Art. 1, Sec. VIII.

Vested with this power it became the duty of Congress to carry it into execution by appropriate legislation. To that end it was vested with discretion to adopt any means or plan suitable for the purpose not inconsistent with the letter or spirit of the Constitution. *McCulloch* v. *Maryland,* 4 Wheat. 316; *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447, 472, 473.

The first act of Congress, A. D. 1790, conferred the power to issue patents upon the Secretaries of State and War and the Attorney General or any two of them. The act of 1793 authorized them to issue by the Secretary of State upon a certificate of the Attorney General that they conformed to the act, and the parties in cases of interference were authorized to select arbitrators for the determination of the controversy. By the act of 1836 the Patent Office was created in the Department of State and given in charge of an

officer called the "Commissioner of Patents." Appeals from him were given to a board of examiners, and by Section 16 of the same act a remedy by bill in equity was given, as now provided in Revised Statutes, Sections 4915, 4918.

By the act of March 3, 1839, an appeal was given from the Commissioner to the chief justice or either of the associate judges of the Circuit Court of the District of Columbia. By the act of 1849 the Patent Office was transferred to the Department of the Interior. Amendments were from time to time made in the law, and several tribunals were provided in the office for examination and inquiry into the merits of claims for inventions, with appeal from one to another and then finally to the Commissioner. The appeal from the Commissioner in all cases of refusal of patent was continued in the courts of the District of Columbia, with such changes as were necessary through the changes made in the judicial system thereof. Finally, by the act approved February 9, 1893 (27 Stat. at Large, 434), creating the Court of Appeals of the District of Columbia, the determination of appeals from the Commissioner of Patents as formerly vested in the General Term of the Supreme Court of the District was vested therein, and in addition it was provided that "any party aggrieved by a decision of the Commissioner of Patents in any interference case may appeal therefrom to said Court of Appeals." Sec. 9.

It was under this clause that the appeal was taken in *Northall* v. *Bernardin,* that is now the subject of discussion.

Under the law the functions of the Commissioner of Patents are both executive or administrative and judicial, the latter preponderating in importance. In matters administrative merely he is under the supervision of the Secretary of the Interior, but when acting judicially, so to speak, his decisions can only be reviewed by the court. *Butterworth* v. *Hoe,* 112 U. S. 50, 66, 67. In that case Mr. Justice

Matthews, after a review of the provisions of the patent law, said:

"It thus appears, not only that the judgment and discretion of the Commissioner, as the head of the Patent Office, is substituted for that of the head of the Department, but also, that that discretion and judgment are not arbitrary, but are governed by fixed rules of right, according to which the title of the claimant appears from an investigation for the conduct of which ample and elaborate provision is made; and that his discretion and judgment, exercised upon the material thus provided, are 'subject to review by judicial tribunals whose jurisdiction is defined by the same statute.  .  .  .  It is not consistent with the idea of judicial action that it should be subject to the action of a superior, in the sense in which that authority is conferred upon the head of an executive department in reference to its subordinates.  Such a subjection takes from it the equality of a judicial act.  That it was intended that the Commissioner of Patents, in issuing, or withholding patents, in reissues, interferences and extensions, should exercise quasi-judicial functions, is apparent from the nature of the examinations and decisions he is required to make, and the modes provided by law, according to which, exclusively, they may be reviewed."

In the cases of issuing or withholding patents, reissues and extensions, the judicial function is exercised in investigating the proofs and determining the right as between the claimant, on one hand, of what may be a valuable right of property, and the public, on the other, interested in defeating what may be an unlawful monopoly. In interference cases the proceeding is distinctly judicial. The controversy is waged between adverse claimants of the same right of property, and the public has no interest therein. It contains "all the elements of a civil case—a complainant, a defendant and a judge—*actor, reus et judex.*" *Fong Yue Ting* v. *U. S.,* 149 U. S. 698, 729.

In this view of the most important of the duties devolved upon the Commissioner of Patents there would seem to be no convincing reason why Congress might not have established the Patent Office as a separate and independent special judicial tribunal for the investigation of the claims of inventors and the adjudication of their rights as against the public at large or adverse claimants of the same invention. Had it seen proper so to do, it might then have given or denied the right of review to any of the courts of general jurisdiction created by or under Section 1 of Article III of the Constitution. In *Murray* v. *Hoboken Land and Imp. Co.,* 18 How. 272, 284, which was a case involving the validity of a sale of land made by a United States marshal under a distress warrant issued by the solicitor of the United States Treasury against a collector of customs for a debt due the United States, Mr. Justice Curtis, speaking for the entire court, said:

"To avoid misconstruction upon so grave a subject, we think it proper to state that we do not consider Congress can either withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty; nor, on the other hand, can it bring under the judicial power a matter which, from its nature, is not a subject for judicial determination. At the same time there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial interpretation, but which Congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper."

The court of private land claims established for a limited period by the act of March 3, 1891 (26 Stat. 854), is a special tribunal of the kind referred to above, and the act creating it and giving the right of appeal therefrom to the Supreme Court of the United States has been upheld by that court. *United States* v. *Coe,* 155 U. S. 76, 85. In that case it was

said by the Chief Justice: "It must be regarded as settled that Section 1 of Article III does not exhaust the power of Congress to establish courts."

Before the creation of the Court of Claims in 1855 there was no way in which the justice of a claim against the United States could be judicially ascertained and established. Congress might recognize and pay them or not, according to its own view of justice and legality in the premises. It could and did also submit claims to investigation, allowance and payment by the officers of the executive departments. Recognizing the justice and expediency of providing a regular tribunal wherein claims against the United States might be investigated, heard, and determined in accordance with the forms of law, the Court of Claims was created and vested with jurisdiction in certain cases of the kind, the scope of which has been increased from time to time. The claims submitted to adjudication were such as no court could take jurisdiction of without the express consent of Congress, because the controversy was with the Government. The forms of procedure excluded trial by jury. Appeals taken to the Supreme Court of the United States were determined upon questions of law arising on the findings of fact made by the court. At the same time by special enactment any appeal could be made determinable upon both facts and law, as in equity cases. *Harvey* v. *United States*, 105 U. S. 671, 691.

Referring to a provision of the act of March 3, 1863, conferring power on the Court of Claims to render judgment against a claimant upon any plea of set off, counter claim, and so forth, offered by the United States without trial by jury, Mr. Justice Harlan said: "There is nothing in these provisions which violates either the letter or spirit of the Seventh Amendment. Suits against the Government in the Court of Claims, whether reference be had to the claimant's demand, or to the defence, or to any set off, or counter claim which the Government may assert, are not controlled by the

Seventh Amendment. They are not suits at common law within its true meaning. The Government cannot be sued, except with its own consent. It can declare in what court it may be sued, and prescribe the forms of pleading and the rules of practice to be observed in such suits. It may restrict the jurisdiction of the court to a consideration of only certain classes of claims against the United States." *McElrath* v. *United States*, 102 U. S. 426, 440.

In *Gordon* v. *United States*, 2 Wall. 561; S. C. 117 U. S. (Appendix) 697, which is one of the cases strongly relied on by the appellant, the majority of the court refused to entertain an appeal from the Court of Claims. The appeal was dismissed on the ground that Congress could not authorize or require the Supreme Court "to express an opinion on a case where its judgment would not be final and conclusive upon the rights of the parties, and process of execution awarded to carry it into effect."

*In re Sanborn*, also, 148 U. S. 222, 226, the court held that it had no jurisdiction to entertain an appeal from the Court of Claims, because the act authorizing the transmission of the claim for investigation by that court required its report to be made to the head of the department transmitting the claim for his information, but without being binding upon him. Finding this to be the meaning of the act, the court said : " We regard the function of the Court of Claims, in such a case, as ancillary and advisory, merely. The finding or conclusion reached by that court is not enforceable by any process of execution issuing from the court, nor is it made, by the statute, the final and indisputable basis of action either by the department or by Congress. It is therefore within the scope of the decision of *Gordon* v. *United States*."

After referring to the cases of *United States* v. *Yale Todd* and *United States* v. *Ferreira*, 13 How. 52, wherein the action required of a district judge in certain cases amounted not to a judgment, but to a mere award, subject to be reviewed by

the Secretary of the Treasury, Mr. Justice Shiras, speaking
for the court in the same case, p. 225, said: "Afterward, and
perhaps in view of the conclusion reached by the court in
those cases, on March 17, 1866, Congress passed an act
giving an appeal to the Supreme Court from judgments of
the Court of Claims, and repealing those provisions of the
act of March 3, 1863, which practically subjected the judg-
ments of the Supreme Court to the re-examination and re-
vision of the departments, and since that time no doubt
has been entertained that the Supreme Court can exercise
jurisdiction on appeal from final judgments of the Court of
Claims. *United States* v. *Alire*, 6 Wall. 573 ; *United States* v.
*O'Grady*, 22 Wall. 641 ; *United States* v. *Jones*, 119 U. S. 477."

In an article by Mr. Edward B. Whitney in the Yale
Law Review, October, 1896, entitled "Federal Judges and
Quasi-Judges," to which we are much indebted, the various
phases of this vexed question as suggested in the acts of
Congress and decisions thereunder are discussed in an inter-
esting and instructive manner. After quoting from the
opinion of Chief Justice Taney in *Gordon* v. *United States,*
he says: "A hearing and decision by such a court is strictly
judicial in its nature when Congress does permit the United
States to be sued ; and when its decision is unreview-
able by the executive it may be made reviewable by
the superior courts. Hence, although the Chief Justice
rightly said that the Supreme Court's power 'is exclusively
judicial, and it cannot be required or authorized to exercise
any other,' nevertheless that court for thirty years past has
had and constantly exercised power to review decisions of
the Court of Claims when appealed ; and by the recent
Tucker act (March 1, 1887) the circuit and district courts
of the United States now exercise a jurisdiction concurrent
with that of the Court of Claims." Turning to later legis-
lation concerning controversies between the Government
and private persons, he says: "Another quasi-judicial tri-
bunal, passing upon questions as to which the United States

are parties interested, is the board of general appraisers sitting at New York. The decisions of this board as to the valuation of imported goods are final. Upon questions of classification they are subject to review by the courts. Their opinions are printed in the Treasury publication entitled 'Synopsis of Decisions.'"

In the recent case of *Interstate Comm. Comm.* v. *Brimson*, 154 U. S. 447, where the majority of the court sustained the validity of the twelfth section of the interstate commerce act authorizing the circuit courts to use their process in aid of inquiries before that commission, the question as to how far Congress, in the execution of other express powers, can go in imposing upon the courts of the United States duties in aid of an executive or administrative body, was again exhaustively discussed in both the opinion of the court and the dissenting opinion of Mr. Justice Brewer. Mr. Justice Harlan, delivering the opinion for the majority, after a careful statement of the doctrine of the cases of Hayburn, Yale Todd, Ferreira and Gordon, upon which the appellant here relies, said: " The views we have expressed in the present case are not inconsistent with anything said or decided in those cases." 154 U. S., p. 485.

Again he says, referring to the aid of the court as therein invoked (p. 487): " The present proceeding is not merely ancillary and advisory. It is not, as in Gordon's case, one in which the United States seek from the circuit court of the United States an opinion that 'would remain a dead letter and without any operation upon the rights of the parties.' The proceeding is one for determining rights arising out of specified matters in dispute that concern both the general public and the individual defendants."

Discussing the nature of this determination he says: " It is none the less the judgment of a judicial tribunal dealing with questions judicial in their nature, and presented in the customary forms of judicial proceedings, because its effect may be to aid an administrative or executive body in the

performance of duties legally imposed upon it by Congress in execution of a power granted by the Constitution."

Under the authority of that case a district judge has been compelled by *mandamus* to compel the attendance of witnesses before special examiners of the Pension Bureau in aid of an investigation of a claim therein. *In re Lochren*, 163 U. S. 693.

It cannot be claimed that the decision invoked by appeal from the Commissioner of Patents to this court is not final and conclusive in the matter. "The Commissioner cannot question it. He is bound to record and obey it. His failure or refusal to execute it by appropriate action would undoubtedly be corrected and supplied by suitable judicial process. The decree of the court is the final adjudication upon the question of right; everything after that depending upon it is merely in execution of it. It is no longer matter of discretion, but has become imperative and enforceable. It binds the whole department, the Secretary as well as the Commissioner, for it has settled the question of title, so that a demand for the signatures necessary to authenticate the former instrument and evidence of grant may be enforced." *Butterworth* v. *Hoe*, 112 U. S., p. 60.

Then, if Congress, which seems clear, could have created a distinct special tribunal, proceeding after the manner of a court of law or equity, for the adjudication of claims to patents of inventions, there would seem to be no convincing reason why it could not, without violating the Constitution, make it a branch or bureau of an executive department, subject to supervision in matters administrative only by the head of that department and subject to review in matters judicial in their nature by a court of competent jurisdiction.

The Constitution simply declares that "The executive power shall be vested in a President of the United States of America." By act of Congress certain executive departments have been created to aid the President in the performance of his duties and to act by his authority. That

there may be a distinct line of separation between the duties with which an executive department is charged is clearly stated by Chief Justice Marshall in *Marbury* v. *Madison*, 1 Cranch, 137, 166, from whom we quote:

"In such cases their acts are his acts; and whatever opinion may be entertained of the manner in which executive discretion may be used, still there exists and can exist no power to control that discretion. The subjects are political. They respect the nation, not individual rights, and being entrusted to the Executive, the decision of the Executive is conclusive. . . . But when the legislature proceeds to impose on that officer other duties; when he is directed peremptorily to perform certain acts; when the rights of individuals are dependent on the performance of those acts; he is so far the officer of the law; is amenable to the laws for his conduct; and cannot at his discretion sport away the vested rights of others. The conclusion from this reasoning is, that where the heads of departments are the political or confidential agents of the Executive, merely to execute the will of the President, or rather to act in cases in which the Executive possesses a constitutional or legal discretion, nothing can be more perfectly clear than that their acts are only politically examinable. But when a specific duty is assigned by law, and individual rights depend upon the performance of that duty, it seems equally clear that the individual who considers himself injured has a right to resort to the laws of his country for a remedy."

The propriety then of judicial interference seems determinable "not by the office of the person, but the nature of the thing to be done." Id. 170. It was in view of such a distinct division between the two classes of duties imposed upon the Commissioner of Patents by the acts of Congress that the conclusion was reached in *Butterworth* v. *Hoe.* The supervision of the Secretary of the Interior was held in that case to be limited to matters purely administrative. Matters judicial in their investigation and determination were

declared to be under the supervision of the courts. "It is not consistent," said Mr. Justice Matthews, "with the idea of judicial action that it should be subject to the direction of a superior, in the sense in which that authority is conferred upon the head of an executive department in reference to his subordinates."

Without further prolonging the discussion of this interesting question, and admitting that we are not without doubt in respect of the soundness of our judgment, we repeat that we have not been able to see our way to the conclusion urged upon us—namely, that the act conferring the right of appeal to this court from the decisions of the Commissioner of Patents is beyond the power of Congress to enact, for the reason that it oversteps the boundaries erected by the Constitution between the three great departments of the Government.

The judgment will therefore be affirmed, with costs; and it is so ordered.    *Affirmed.*